# Lycoming County Insurance Company *versus* Updegraff.

*Insurance of Merchandise.—Building Permit.—Evidence as to Waiver of Condition.*

1. A firm took out a policy of insurance upon merchandise contained in a "new frame barn, wagon, and wareroom," situated on an alley and occupied for a warehouse, and subsequently assigned their interest in the policy and property insured to others, who erected a brick addition of their storeroom (which was built upon the front of the lot, on the rear of which the frame barn was erected) extending it back to the alley, and requiring the removal of part of the barn: afterwards, the new building, and the remnant of the frame barn, with their contents, were destroyed by fire. In an action against the insurance company for the insurance upon the goods in the remnant of the barn and in the brick extension, it was

*Held,* that no recovery could be had, under the policy, for any loss of goods in the new brick building or extension of storeroom, and, if at all, only for those contained in the remnant of the frame barn and wareroom as originally erected and insured.

2. Where by endorsement on the policy at the time of building the brick extension, it appeared that the insured had given their note for "carpenter's risk," and had paid five per cent. upon it, and upon the foot of the note, a memorandum, that it was for additional risk in extending storeroom, the endorsement and memorandum cannot be construed into consent by the insurance company that any part of the frame barn should be torn down, or into any engagement to insure goods in the extension of the storeroom; they amount to consent only that the storeroom on the front of the lot might be extended, thus increasing their risk, and were neither consent or evidence of consent that the frame barn might be extended, or that a part of it might be taken away.

3. By a condition in the policy, the insured were bound; in case of loss by fire, to forthwith give notice to the secretary, and within thirty days after loss to deliver to the secretary a particular account of such loss or damage. An

[Lycoming County Insurance Co. *v.* Updegraff.]

account was sent by mail to the secretary, setting out the names of the part-
ners, the number of their policy and amount insured therein, the value of
their stock in the store, as estimated from their books, and reciting insurances
in two companies (the store in front and its brick extension having been in-
sured by another company) giving an account of *an entire undivided loss*, and
claiming it to be embraced in the policies of the two companies, but without
stating the amount of the loss or damage upon the policy of the insurance com-
pany defendant, nor that the loss was upon goods insured under that policy,
nor in what way that loss was ascertained.   *Held*, that the account sent, was
not such a particular account of the loss and damage as was required by the
policy.
   4.  Where the president of the insurance company defendant, when examin-
ing the books of the plaintiffs to ascertain the loss of goods in the store, was
applied to by them for instruction how to make out their statement, and gave
a memorandum in pencil, without date or signature, of what it should con-
tain, neither the examination of the books nor the memorandum were evidence
that the requirements of the policy in relation to a particular account of the
loss had been waived by the company: the memorandum *given to plaintiffs
by which* to make out their statement, was, in effect, a demand of compliance
with the terms of the policy ; and it was error in the court below to instruct
the jury that the giving of the memorandum was such an act as would waive
the requirements of the policy, or that there was any evidence of a waiver
whatever.

ERROR to the Common Pleas of *Lycoming county*.

This was an action of covenant on a policy of insurance brought
in the Common Pleas to August Term 1858, by A. Updegraff,
A. A. Winegardner and William Updegraff, late partners, trading
as Updegraff, Winegardner & Co., for the use of J. H. Fulmer &
Co., against the Lycoming County Mutual Insurance Company.

The material facts of the case are as follows:—

The company, on the 29th October 1853, issued a policy of
insurance to Updegraff, Winegardner & Co., insuring $3000 on
"stock of merchandise as described in their application," viz. :

   " For merchandise owned and occupied by said A. Updegraff,
Winegardner & Co., and the contents contained in the said barn,.
wagon and warehouse, owned by A. A. Winegardner, situate in
the borough of Williamsport, Lycoming county, Pennsylvania,
on the corner of Sugar and Tom alley, valued at $3000.  For a
further description of said warehouse, &c., see application of A.
A. Winegardner of same date for insurance on the same."

   " Contents to be insured as follows : Sugar, salt, coffee, iron,
steel, and other heavy articles of merchandise, wagons, horses,
&c.   A good well of water, with pump, in yard."

   The application of A. A. Winegardner, merchant, for insur-
ance, was on "A new frame barn, wagon and wareroom owned
by said Winegardner, and occupied by Updegraff, Winegardner
& Co., for warehouse, &c., situate in the borough of Williams-
port, Lycoming county, Pennsylvania, on the corner of Tom and
Sugar alley, front on Tom alley, 52 by 30 feet; back part on
Sugar alley, 20 by 20 feet; adjoining is a pig-sty and hen-coop,
10 by 10 feet; all two stories high, well finished and in good

repair—valued at $650; 2 feet, a frame wood-house adjoining the brick candy shop manufactory; east 10 feet, is the new frame barn of R. Farris, Esq.; south, is Tom alley; west, is Sugar alley; a good well of water, with pump, in yard."

On the 29th of April 1854, Updegraff, Winegardner & Co., assigned their interest to Ralph Elliott & J. H. Fulmer. March 6th 1856, Ralph Elliott transferred his interest to J. H. Fulmer, and May 11th 1857, J. H. Fulmer transferred to J. H. Fulmer & Co., the plaintiffs below.

The building which contained the insured property, was on the rear end of the lot facing Tom alley, and was used and occupied only as a warehouse and wagon shed.

On the front of the same lot, facing Third street, was a brick storeroom, occupied by the plaintiffs for the sale of ordinary country merchandise, extending back towards the frame "barn, wagon and warehouse," and separated from it by vacant or unoccupied ground for a distance of 81 feet.

On the general merchandise contained in this storeroom, Updegraff, Winegardner & Co., the 24th March 1853, effected insurance for one year in the Franklin Fire Insurance Company, of Philadelphia, for $10,000, which was continued and transferred by endorsements to the present plaintiffs.

This insurance was in the following words: On "merchandise, such as is usually kept in country stores, contained in a three story brick building on the south-east corner of Third street and Sugar alley, in the town of Williamsport, Lycoming county, Pennsylvania, with privilege to erect a brick dwelling on the back part of the lot adjoining the above-named building in the rear."

The following endorsement was made on this policy of the Franklin Company, July 24th 1853: "Elliott & Fulmer, the assignees of the within policy of insurance, have permission to make an addition to the building in which the goods insured are contained, running back to the alley for 81 feet one story high, and 30 feet two stories high, and both 22 feet wide, making the total length of addition 111 feet; after completion no goods to be kept on second story. This addition to be without prejudice to the within policy. After the addition above-mentioned, all the goods on the second story to be at the risk of Elliott & Fulmer.

                    "By direction of the company, &c.,
"July 24th 1855.                C. W. SCATES, Agent."

On the 16th July 1855, the following endorsement was made on the policy of the Lycoming Insurance Company:

"This is to certify, that the insured in the within policy have

given their note for one hundred and fifty dollars for carpenter's
risk at 5 per cent.; and have paid on the same $7.50, being 5
per cent. on note.

" Survey, 50 cents—paid.            ROBERT POTT,
      " Agent Lycoming County Mutual Insurance Company.
" Williamsport, July 16th 1855."

The note referred to is as follows:—

" $150.    For value received in policy No. 34,734, which ex-
pires the 1st day of October, A. D. 1858, issued by the Lycoming
County Mutual Insurance Company, I promise to pay the said
company or their treasurer, for the time being, the sum of one
hundred and fifty dollars, in such portions and at such time or
times as the directors of said company may, agreeably to their
act of incorporation, require, including unpaid assessments.

      " Witness our hands, at Williamsport, in the county of Lyco-
ming, the 16th day of July 1855.

      " Additional risk—improvements in extending storeroom.
                                  " ELLIOTT & FULMER."

In July 1855, the work of extending the storeroom, was com-
menced.    It was 22 feet wide, and covered the 81 feet of vacant
ground between the store and " the barn, wagon and warehouse,"
and to make room for its further extension to the alley, the
" barn, wagon or warehouse" was cut down and entirely removed
for a width of 22 feet, and an entirely new brick building erected
on its site, constituting an extension of the store in one continu-
ous room 22 by 111 feet without any partition or division what-
ever, thus throwing the whole from Third street to Tom alley,
into one open storeroom 208 feet long.

Sixteen feet of the original " barn, wagon and warehouse"
remained; making a room 16 by 30 feet, in which was stored
old barrels, iron, coal, &c., the whole of which is valued at
$307.50.

The whole balance of the claim of $3000 was contained in
the new brick extension of the storeroom erected partly on the
place of the barn removed.

On the morning of April 7th 1858, a fire broke out under the
office in the new building, about 100 feet from the alley and
about 70 feet from the upper line of the " barn, wagon and
warehouse."

The day after the fire, James Rankin, the President of the
Lycoming Insurance Company, who happened to be in town,
visited the ruins.    A few days after, one of the firm brought the
firm's books to the hotel.    " Mr. Robinett, an agent of The
Franklin Fire Insurance Company, received them with Dr. Ran-

[Lycoming County Insurance Co. v. Updegraff.]

kin, with a view to ascertain the loss of goods in the whole store of Fulmer & Co."

It did not appear that Dr. Rankin was present at the fire or made any examination of books in pursuance of any notice to the company or in any official capacity.

The 13th April 1858, the following statement of loss was mailed, addressed to James Rankin, President of the Lycoming Company :—

"Williamsport, Pa., April 13th 1858.

"James Rankin :—

President of the Lycoming County Mutual Fire Ins. Co.

"J. H. Fulmer & Co., of Williamsport, Pennsylvania, who are insured in the above-named company by policy No. 34,734, to the amount of three thousand dollars ($3000) on goods, furnish the following statement to the said company, which is as particular an account of their loss and damage by the fire which occurred on the morning of the 7th of April, inst., as the nature of the case will admit of :—

"The fire was first discovered between three or four o'clock in the morning, near the centre of the store. We are entirely unable to account for the origin of the fire. The firm of J. H. Fulmer & Co. consists of Jacob H. Fulmer, C. A. Stancliff, Joseph H. Wonderly and Jacob W. Hyman. The stock of goods was entirely consumed. The value of our stock at the time of the fire, as ascertained from the books, which were examined on the 13th instant, by Dr. Rankin, for the Lycoming County Mutual Fire Insurance Company, and by Mr. Robinett, for the Franklin Fire Insurance Company of Philadelphia, was $14,429.78. This sum was arrived at as follows :

"Amount of inventory in January 1858, and purchase from January 1858 to April 6th 1858 . . . $26,151.78
"Amount of sales from January 1858 to April 6th 1858, $13,671, on which was a presumed profit of $1662, deducted from $13,671 equals . . 11,722.00
                                                                    _____
                                                                    $14,429.78

"The only insurance on our stock of goods were three thousand dollars ($3000) in the Lycoming County Fire Insurance Company, as above stated, by policy dated the 29th of October 1853, to expire on the 1st day of October 1858, and ten thousand dollars insured in the Franklin Insurance Company of Philadelphia, by policy No. 147,547, dated the 24th of March 1853, and renewed on the 23d of March 1858, to expire the 24th of March 1859."

[Lycoming County Insurance Co. *v.* Updegraff.]

"The policies were both taken originally in the name of Updegraff, Winegardner & Co., and by various assignments regularly transferred to us."

Sworn to by            J. H. Fulmer,
            H. Henperly,
            George Agole.

The following paper was also produced, written in lead pencil, without date and without signature, proved to be in the handwriting of James Rankin:

"State amount of indebtedness and on what policy; then state in what way the amount of loss is arrived at; state who are the partners; state what insurance may be in any other company; state whether all assessments demanded have been paid."

The company defendant, claimed: That they had no knowledge of, and never assented to the demolition of the "barn, wagon or warehouse," or any part of it, and that their policy did not cover any goods contained in the new building, which was an extension of the storeroom; that the policy was vitiated by an unauthorized destruction of the greater part of the building in which the goods covered by the insurance were contained, and did not, therefore, cover even the $307.50 worth of coal, iron, &c., remaining in the barn in the space 16 by 20 feet not removed; and requested the court to charge the jury:

1. That the policy, under which the plaintiffs' claim, covered only such merchandise as was contained in a "frame barn, wagon and warehouse" 30 by 52 feet on Tom or Black Horse alley, and defendants are not liable for the loss of any goods not contained in such building.

2. The new brick building was not, within the meaning of the policy, an addition nor alteration of the frame barn, wagon and warehouse, 30 by 52 feet, but was, in contemplation of law, essentially an independent structure not embraced within the policy, and the defendants are not liable for the loss of any goods or merchandise which it contained.

3. The plaintiffs having, without the consent of the company, removed 22 feet of the frame barn, wagon and warehouse, 30 by 52 feet, on Black Horse or Tom alley, and having erected a new brick building extending from the rear of the store on Third street to said alley, and covering the site of that part of the frame barn, wagon and warehouse so removed, varied the character of the risk insured; and that the fire having originated in the new building beyond the limits of the frame barn, wagon and warehouse, and communicated to the remaining part of the said frame barn, wagon and warehouse, through and by reason of the said new building, is conclusive upon the jury that the hazard was thereby increased and the plaintiffs cannot recover..

4. That the certificate endorsed on the policy that the assured have given their premium note for $150 for "carpenter's risk," taken in connection with the said note, which recites that it was given for "additional risk in extending storeroom," did not authorize the removal of that part of the frame barn, wagon and warehouse, 30 by 52 feet, which was removed; nor the erection in place thereof of the new brick building which was afterwards erected, and cannot be construed to extend the liability of the defendants to the goods or merchandise contained in said brick building.

5. That there is no evidence that the plaintiffs after the fire forthwith gave notice to the secretary of the defendants of their loss, as required by the conditions of the policy, and that there is no evidence that the defendants ever waived or dispensed with such notice.

6. That the paper dated April 13th 1858, directed and mailed to the president of the company, was not such a particular account of the plaintiffs' loss as was required by the policy, and that the paper in the handwriting in pencil of James Rankin, neither purports to be, nor was, an official act of the company, nor was said Rankin authorized to waive the requirement of the policy in relation to such particular account of loss; and the said paper of 13th April 1858, is not in accordance with said pencil memoranda.

7. That the paper dated April 13th 1858, put in evidence by the plaintiffs, admits that the plaintiffs had additional insurance on the merchandise for the loss of which they now claim, and as the aggregate insurances are greater than the same allowed to be insured by the defendant's policy the plaintiffs cannot recover.

8. That the allowance of the carpenter's risk to Elliott & Fulmer, endorsed upon the policy of the plaintiffs, expired upon the transfer of the policy to J. H. Fulmer & Co., and there being no authority to the latter to change the character of the building in which the merchandise was insured, the plaintiffs cannot recover, as the merchandise destroyed was not in the building insured.

The court, after stating the case, charged the jury as follows:

"The evidence in this case shows that a fire occurred at the time already stated, which consumed the buildings then occupied by J. H. Fulmer & Co., for merchandising, and their stock of goods, with the exception of a few articles that were saved. The insurance in this case was effected on property estimated at $4500, two-thirds of which sum the plaintiffs seek to recover in this action.

"The kind of property insured is stated in the application and the policy of insurance, which are in evidence. The insurance was effected at a time when the property insured was in a build-

[Lycoming County Insurance Co. *v.* Updegraff.]

ing which was afterwards removed, and another substituted in its stead.

" The several grounds of defence are embodied in the points presented by the counsel of the company to the court, which we answer as follows :

" 1. The defendants are not to be allowed for the loss of any goods not contained in the building described in the application and policy.

" 2. This we answer in our answer to the fourth point.

" 3. If the plaintiffs, without the consent of the company, removed twenty-two feet of the frame wagon and warehouse, 30 by 52 feet, on Black Horse or Tom Alley, and having erected a new brick building, extending from the rear of the store, on Third street, to said alley, and covering the site of that part of the frame barn, wagon, and warehouse, so removed, did vary the character of the risk insured. We cannot say to you that the plaintiffs did, without the consent of the company, remove the buildings mentioned in this point, but submit it to you as a question of fact, whether the fire originated in the new building, beyond the limits of the frame barn, wagon, and warehouse, and communicated to the remaining part of the said wagon and warehouse through and by reason of the said new building, and whether, these facts are so, and whether, thereby, the hazard was increased, is submitted to your determination. If the alterations or additions mentioned in this point were made without the knowledge and consent of the company, and the hazard was thereby increased, the plaintiffs cannot recover.

" 4. On the 16th of July 1855, there is endorsed on the policy a certificate, by the agent of the company, in the following words: ' This is to certify, that the insured in the within policy have given their note for $150 for carpenter's risk at 5 per cent., and have paid in the sum of $7.50, being 5 per cent. on the note.' The note given by Elliott & Fulmer, at the same time, has these : ' Additional risk for improvement in extending store-room.' The word ' extending' does not, in the opinion of the court, mean the removal or destruction of a building, but an increase in the size of the old building, and cannot be construed to extend the liability of the company to the goods or merchandise contained in said brick building. The court having given you the meaning of the word ' extending,' as found in the note referred to, submit to you to determine, from the evidence, whether what was done was an extension of this storeroom, or removal of the old one in part, and was in the contemplation of the parties at that time ; and whether the building put up and the removal of parts of the building, were or were not done by permission of the company.

" 5 and 6. We cannot give the instruction here requested. There

is evidence that the president of the company was at the scene of the fire soon after it occurred, and made an examination of the plaintiffs' books; that a paper, a statement, dated April 13th 1858, was mailed and addressed to the president of the company, through the post-office, and that it came into the hands of the secretary, was before the board of directors, and was in the custody of the secretary as an office paper. This paper is not such a particular account of the plaintiffs' loss as was required by the policy, and the paper in the handwriting of James Rankin does not purport to be an official act, but was such an act as would waive the requirements of the policy. But the jury must take into consideration the whole evidence bearing on these points. The court are of opinion that the president might waive the notice and the statement required by the policy, and submit it to you to determine whether he did so waive it. If the statement required by the policy was not waived by Dr. Rankin, but was required by him, and if such statement was not furnished within the time required, plaintiffs cannot recover.

"In the memorandum made by Mr. Fulmer, at the request of Dr. Rankin, the indebtedness is set out, and on what policy, and the way the amount of the entire loss sustained by plaintiffs was ascertained is set out, but not the amount of indebtedness, and on what policy, and it is not stated in what way the amount of loss which is claimed from the company is arrived at, and in these particulars it is not in accordance with the pencil memorandum.

"7. The paper of the 13th April 1858, admits that the plaintiffs have insurance on merchandise, or on their stock of goods, to the amount of $3000 in the Lycoming County Insurance Company, and $10,000 in the Franklin Insurance Company, but we cannot instruct you that that paper admits that the plaintiffs had additional insurance on the merchandise, for the loss of which they now claim, and that as the aggregate insurances are greater than the sum allowed to be insured by the defendants' policy, the plaintiffs cannot recover. If the facts are stated in this point, the instruction asked would be given if it appeared that the aggregate insurance at the time the insurances were effected, were greater than the sum allowed to be insured.

"8. The carpenter's risk increased, is endorsed on the back of the policy, July 16th 1855, when a note was received. This was assigned to J. H. Fulmer, March 6th 1856; to J. H. Fulmer & Co., March 11th 1857; and to J. H. Fulmer, May 11th 1857. On the 6th of March 1856, a receipt of the company was given in evidence, for assessment No. 12, $21: and on the 12th May 1857, a receipt for assessment No. 14, $18, and additional $6. Mr. Bowman states that their assessments were made 11th May 1857, and that that assessment was due by J. H. Fulmer, and

would not be an assessment made on the assignment of May 11th. Fulmer & Elliott paid the carpenter's risk, $150, and when Fulmer took the policy he gave no note for the increased risk. The court cannot instruct you, under the evidence in the cause, that the carpenter's risk, as it is called, expired upon the transfer of the policy to J. H. Fulmer & Co., and that being the opinion of the court, you must determine whether the character of the building in which the merchandise was insured was changed, and, if it was changed, whether it was by consent or permission of the company, for if it was, plaintiffs are not prevented for this reason from recovering. But if no authority was given to change the character of the building, the company would not be liable."

Under these instructions, there was a verdict and judgment in favour of plaintiffs for $2544.21, whereupon the defendants sued out this writ, and assigned for error the following matters, viz. :—

III. (1.) The court erred in submitting to the jury as a question of fact whether or not the company assented to the removal of the twenty-two feet, &c., of the buildings referred to, and the substitution of the new buildings in its place, there being no evidence whatever to show that the company did consent to any such change of the premises in which the merchandise insured was contained, or to a removal of the property insured to the new brick store.

(2.) The evidence in the cause, which was not disputed, having established the fact that the fire originated in the new buildings beyond the limits of the frame buildings in which the merchandise was insured, and the loss having been occasioned by reason of the erection of such new buildings, the court erred in submitting to the jury, as a question of fact, whether or not the hazard was thereby increased.

II. The court erred in allowing the jury to determine " whether what was done was an extension of the storeroom or removal of the old one in part, and was in the contemplation of the parties at that time, and whether the buildings put up and the removal of parts of the buildings were or were not done by permission of the company." There was no evidence to vary the terms of the endorsement on the policy and the additional premium note; these together constituted a written contract, the construction and meaning of which were to be determined by the court alone. The court should have instructed the jury clearly that the defendants were not liable for any merchandise in the new brick building, and confined their inquiry specifically to the loss of merchandise in what remained of the frame barn.

III. (1.) The court erred in instructing the jury that "the paper in the handwriting in pencil of James Rankin, which does not purport to be an official act, was nevertheless such an act as would waive the requirement of the policy," which ren-

[Lycoming County Insurance Co. *v.* Updegraff.]

dered it obligatory on the part of the insured to deliver to the secretary, within thirty days after loss, a particular account of such loss or damage.

(2.) The court having instructed the jury that the "paper dated April 13th 1858, is not such a particular statement of the plaintiffs' loss as was repaired by the policy," and having further instructed them that the "paper in the handwriting of James Rankin does not purport to be an official act," and having further instructed them that the statement "is not in accordance with the pencil memoranda," should have instructed them that the plaintiffs could not recover.

IV. The court erred in their answer to the defendants' seventh point, because the paper of the 13th April 1858 was presented by the plaintiffs to the company as and for a compliance with the requirements of the policy; and as it was not alleged or proven that said paper originated in any mistake, the plaintiffs were estopped from denying the statement therein made to the company; and as it appears upon the face of the paper that the property now claimed for was insured in two companies, and for a greater amount than was authorized by the terms of the policy, the plaintiffs were not entitled to recover.

V. The court erred in submitting it to the jury to determine "whether the character of the building was changed by consent or permission of the company." There was no evidence of any such consent unless it could be found in the endorsement upon the policy, and the note for the "additional risk for extending storeroom," the construction of which, as a modification of the contract, was a question of law for the determination of the court.

VI. The court erred in permitting the plaintiffs to recover for any merchandise contained in the new brick building, and by inconsistent charges which misled the jury.

The seventh assignment of error related to the admission in evidence of the statement of loss dated April 13th 1858, and the rejection of evidence as to the extent of the plaintiffs' claim, and the fact that their statement had been rejected by the board of directors, but it was not noticed by this court.

The case was argued in this court by *William H. Armstrong* and *J. Armstrong*, for plaintiffs in error. The counsel for defendants in error furnished no printed argument.

The opinion of the court was delivered, November 11th 1861, by

STRONG, J.—It is quite extraordinary that under a policy of insurance upon merchandise, contained in a building particularly described, a recovery has been permitted for a loss in another building, erected in part upon the site of the one in which the goods were insured. Yet such is the case now before us. The

4 WR.—21

assignors of the plaintiffs below, under whom they claim, took out a policy with the defendants upon merchandise contained in a "new frame barn, wagon, and wareroom," occupied by them for a warehouse, &c., situate in the borough of Williamsport, Lycoming county, Pennsylvania, on the corner of Tom and Sugar alley; front on Tom alley 52 by 30 feet; back part on Sugar alley 20 by 20 feet." On the other end of the same lot, and distant 81 feet from the "frame barn," was a brick store-room, containing a stock of goods which the assignors of the plaintiffs had previously insured with another company. While the policy of the defendants was running, the assured demolished a portion of the "frame barn, wagon, and wareroom," and erected a brick extension of the storeroom, 22 feet in breadth and 111 feet in length, reaching entirely through the lot to Tom alley, and covering 30 by 22 feet of the ground upon which the "frame barn," &c., has stood. The new building and the remnant of the frame barn, with their contents, were afterwards destroyed by fire, and the plaintiffs sought to recover under their policy with the defendants, for the loss of the goods contained in the extension of the "storeroom," as well as for the loss of those contained in the remnant of the "frame barn." In the court below, their attempt was successful, and this without any fault of the defendants. The learned judge evidently misapprehended an endorsement on the policy, and a clause in the premium note. The endorsement certified that the insured had given their note for $150, for carpenter's risk, at five per cent., and had paid on the same $7.50, being five per cent. on the note. At the foot of the premium note were the words "additional risk in extending to storeroom." This certificate, with the memorandum on the note, the court was asked to say, did not authorize the removal of that part of the frame barn which was removed, nor the erection of the new brick building in its place, and could not be construed to extend the liability of the defendants to the goods or merchandise contained in said brick building. This point was not correctly answered. What the court said in regard to it was well fitted to mislead the jury. They were told that the word "extending" does not mean the removal or destruction of a building, but an increase in the size of the old building, and cannot be construed to extend the liability of the company to the goods or merchandise contained in said brick building. The learned judge then proceeded as follows:—"The court, having given you (the jury) the meaning of the word extending, as found in the note referred to, submit to you to determine, from the evidence, whether what was done was an extension of this storeroom, or removal of the old one in part, and was in the contemplation of the parties at that time; and whether the building put up, and the removal of parts of

the building, were or were not done by permission of the company." In our opinion this was an inadequate and erroneous answer to the point proposed. Neither the memorandum on the note, nor the endorsement on the policy, nor both together, can be construed into consent of the defendants to the demolition of any part of the frame barn, wagon, and wareroom, much less into any engagement to insure goods in the extension of the storeroom, or in the new building. The memorandum on the note was at most but a consent that the "storeroom" on the other end of the lot might be extended, which would necessarily increase the hazard by bringing buildings nearer the property insured. It was neither consent, nor evidence of consent, that the frame barn might be extended, or that a part of it might be taken away. The jury should have been unqualifiedly instructed that the plaintiffs could not recover for any loss of goods in the new brick building, or extension of the storeroom, and that there was nothing in the endorsement on the policy, or in the memorandum on the premium note that warranted such a recovery.

But even though there was no consent to an alteration of the frame barn, we do not feel prepared to say that the plaintiffs might not recover for the loss on the goods contained in what remained of it, notwithstanding the alteration. The alterations which it was stipulated should avoid the policy, were such as increased the hazard without consent of the company. The court could not say, as a legal deduction from the facts, that the hazard was not increased with the consent of the company. There was a consent to the extension of the storeroom, and the fire commenced in that. The increased hazard was occasioned rather by that extension than by the alteration ; at least whether it was or not was for the jury.

We need say no more respecting the first, second, fifth, and sixth assignments of error.

The third and fourth assignments relate to the particular account of the loss and damage which, according to the conditions of the policy, the assured were under obligations to furnish to the secretary of the company within thirty days after the loss. We concur in opinion with the learned judge of the Common Pleas, that the paper which was furnished to the president of the company, dated April 13th 1858, was not such a particular account of the loss as was required by the policy. It was the only account ever furnished. But we dissent from the opinion of the court that there was any evidence that the requirements of the policy was ever waived. The memorandum of Dr. Rankin, given to the assured, instead of being a waiver was the opposite. It was in effect a denial of compliance with the terms of the policy. Nor can the examination of the books of Mr. Fulmer, in company with the agent of the Franklin Insurance Company,

[Lycoming County Insurance Co. *v.* Updegraff.]

be treated as any evidence of waiver. That was an examination to ascertain the loss of goods in the whole store. And it was not understood by the assured to be a waiver. They asked for instruction how to make out their statement, and were given to understand that a particular statement was necessary. They undertook to comply. How it can now be claimed that they were released from the obligation to furnish it, we cannot discover. We think the fifth point of the defendants should have been affirmed.

Judgment reversed, and a *venire de novo* awarded.