Ezra H. Light, Appellant *v.* The Countrymen's Mutual Fire Insurance Company of Lebanon Co., Pa.

*Fire insurance—Insurable interest—Estoppel.*

Plaintiff being owner of premises on which was erected a barn, insured the same against loss by fire in defendant company. Subsequently, while the policy was in force, he sold said premises to T. Before delivering deed for same, plaintiff took it and the policy of insurance to the secretary of defendant company and asked his advice as to how the insurance could be fixed so as to be retained by him as security for the payment of a purchase money judgment to be given to plaintiff in part payment for the property. The secretary told him to hold the policy as it was and that the assessments would be sent to him, and that after T paid the judgment the policy could be transferred to him. This was done and three assessments were subsequently levied upon this policy and sent to plaintiff for payment, and paid by him. Plaintiff brought this action to recover the amount due him on said policy by reason of the total destruction of said barn by fire. The defense set up was want of insurable interest in the plaintiff. *Held*, that, (1) when plaintiff sold and conveyed the land on which the barn in question stood, he parted with all his title, and thereafter had no insurable interest therein; (2) the mere holding of a judgment for part of the purchase money of the property sold would not confer an insurable interest, upon which a policy could then be taken out for the protection of the judgment; Grevemeyer v. Southern Mut. Ins. Co., 62 Pa. 340, followed; (3) under the facts of this case, the defendant is estopped from asserting the want of insurable interest in the plaintiff. There was a valid existing policy at the time of the sale, and it continued in force by the voluntary agreement of both parties at the time of the fire. As it was in force for the purpose of collecting assessments upon it, it was certainly in force for the purpose of paying the loss, and for securing indemnity against which those assessments were paid by the plaintiff and received by the defendant.

Argued Feb. 21, 1895. Appeal, No. 241, Jan. T., 1895, by plaintiff, from judgment of C. P. Lebanon Co., June T., 1893, No. 53, for defendant on point reserved non obstante veredicto. Before GREEN, WILLIAMS, MCCOLLUM, DEAN and FELL, JJ. WILLIAMS, J., presiding. Reversed.

Summons assumpsit on policy of fire insurance.    Before MEILY, P. J.

At the trial it appeared that Ezra H. Light, the plaintiff, was the owner of a barn situate in Swatara township, Lebanon county, insured in the defendant company for $400.    In September, 1889, he contracted to sell inter alia the premises upon which the barn was erected to David H. Tice, and at the consummation of the sale took a judgment bond as part payment of purchase money.    Before the delivery of the deed to Tice, Light called upon Adam Gettle, secretary of defendant company, and asked his advice what to do with the policy so that it would be good in case of loss by fire.

He was informed by the secretary of the company that he had an insurable interest and could retain the policy, as he had held it theretofore; that then the assessments would be sent to him and he could see that they were paid ; and that if they were sent to Tice he might permit the policy to be forfeited by not paying the assessment, and the plaintiff would know nothing about it.

In accordance with this advice the plaintiff retained the policy, delivered the deed and took a purchase money judgment.    The assessments were laid in his name, sent to him, and he paid them to the company in January, 1890, February, 1891, and in March, 1892.

On the night of the 30th of May, 1892, the barn was destroyed by fire,—a total loss.    The company refused payment on the ground that the plaintiff had no insurable interest in the property.    The plaintiff claimed that if he had no insurable interest he was misled to his injury by the secretary of the company, acting in his official capacity, and that the defendant company was estopped to set up a want of interest.    Among defendant's points was the following: " (5) The verdict must be for the defendant.    *Answer:* The question raised by that point is reserved."    Verdict for plaintiff for $453.06. .Subsequently the court entered judgment for defendant on the reserved point non obstante veredicto. '  Plaintiff appealed.

*Error assigned,* inter alia, (3) in entering judgment for defendant non obstante veredicto.

*George B. Schock, Thomas H. Capp* with him, for appellant. —The learned court below ruled the case as though plaintiff had received a policy of insurance from the company to secure him against loss on his judgment against Tice in the first instance, and holds that such policy, being to a party without interest, is ab initio void, and that no act of the secretary can infuse life into it. But this suit is not brought upon a policy void ab initio. At the time of the interview with the secretary of the defendant company, the policy was and had been for years in full life on property owned by the plaintiff in fee. At that interview, the secretary of the company did what amounted to writing these words into the policy:

"Ezra H. Light, being about to convey to David H. Tice the property insured in this policy, and to take in part payment of the purchase money a judgment bond from said Tice, is permitted to retain this policy as it now stands as security for the payment of said judgment in case of loss by fire; assessments to be sent to the said Light and to be paid by him so as to secure the policy against forfeiture for non-payment of assessments.                    A. L. GETTLE, Sec." ·

We submit that where a man fully and candidly explains his title, takes his insurance in the manner in which he is advised by an officer of the company, pays premiums for years, rests in perfect security by reason of the acts and declarations of the company, he is entitled to the indemnity which he had reason to believe he had purchased: Burson v. Fire Assn., 136 Pa. 283; Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475; Wachter v. Phœnix Assurance Co., 132 Pa. 438.

*J. M. Funck, J. G. Adams* with him, for appellee.—The contract between the plaintiff and company defendant had become void by the conveyance to Tice; the purchase money judgment held by him was not an insurable interest upon which a valid insurance contract could be based, and therefore no acts of the secretary of the company could operate by way of estoppel to infuse life into or make valid a contract which was illegal and void ab initio. The plaintiff by his conveyance to Tice of the property insured parted with his insurable interest also: Wilson v. Trumbull Fire Ins. Co., 19 Pa. 372. The lien of plaintiff's judgment was a general lien; the fact that it was due for

purchase money did not draw after it a specific pledge of the land: Grevemeyer v. Southern Mut. Fire Ins. Co., 62 Pa. 340; F. M. Ins. Co. v. Turnpike Co., 122 Pa. 47.

The authorities cited to show that the company was estopped to set up this defense are all cases where some officer of the company had made a representation or led the party to believe that some condition necessary to be performed had been complied with, and thereby deceived them and lulled them into the belief that their rights were secured. In the present case, the courts are asked to enforce an insurance contract void for want of insurable interest, because the secretary of the company stated to the plaintiff that he could have the policy transferred or have it remain in his own name. The declaration of the secretary that a purchase money judgment was an insurable interest, does not make it the law, and the company is not bound by it by way of estoppel, because it was just as much the duty of the plaintiff to know the law as it was the duty of the secretary. The present case is similar to that of the Worcester Bank v. The Hartford Fire Ins. Co., 11 Cush. 265, cited by this court in Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475.

OPINION BY MR. JUSTICE GREEN, July 18, 1895:

There is no doubt that when Light sold and conveyed the land on which the barn in question stood, he parted with all his title and, after that, he had no insurable interest in the barn. It is equally true that the mere holding of a judgment for part of the purchase money of the property sold, would not confer an insurable interest, and no recovery could be had on the policy for the protection of the judgment: Grevemeyer v. Southern Ins. Co., 62 Pa. 342.

The learned court below ruled the case finally on the proposition that the plaintiff had no insurable interest in the barn at the time of the fire, and therefore could not recover.

But the ruling on that question does not dispose of the case. There was raised upon the record a question of estoppel, and if the facts which make out an estoppel were established by the testimony then another question altogether arose. The function of an estoppel is to prevent the party who is bound by it from alleging the truth of the matter against which he is

estopped. In other words although he may have a perfectly good defence he can neither plead it nor prove it. He cannot assert it against the adverse claim.

In this case it is only necessary to inquire whether the facts which establish an estoppel against the defense of want of insurable interest in the plaintiff, appear on the record. The plaintiff being examined in his own behalf testified: " When I had sold this property and had the papers, then I took the papers and took the insurance policy with it, the deeds for the property and the judgment which I had drawn, and insurance policy. I went to Gettle, the secretary of the company, to get an advice what to do with this policy, so that it would be good. He said you could transfer this, but you have an insurable interest in it as it is, and you had better hold the policy as it is and the assessments will be sent to you; then you will be sure that they are paid, and after Tice pays you you can transfer the policy to him. Q. What did you do in accordance with that advice? A. So then I held the policy and didn't transfer it. Q. Did you deliver the deed, then? A. Yes. . . . Q. In accordance with that arrangement did they afterwards send the assessments to you? A. Every year. Q. And did you pay them? A. Yes, sir."

The plaintiff then proved that three assessments were subsequently, in the years 1890, 1891 and 1892, levied upon his policy by the company and sent to him for payment, and that he paid them all. In all this testimony the plaintiff was substantially corroborated by the defendant's secretary, Gettle, as to the original transaction, and by their secretary Bomberger, subsequent to Gettle, as to the assessments and their payment. There was no real controversy about these facts, and the jury has found them under the charge of the court.

It appears therefore by the testimony and the verdict that the plaintiff, under the advice of the secretary of the company, continued to hold his policy, that he delivered the deed to the purchaser without transferring the policy, that the company subsequently, during three consecutive years, treated the policy as continuing in force, declared assessments upon it to cover losses, and accepted payment of the assessments from the plaintiff during all that time. They of course knew of the sale of the property, and that the policy was retained by the plaintiff,

and they undoubtedly treated it as an existing, active policy in full life up until the time of the fire. Can they be permitted now to repudiate their own voluntary action, and assert that it was a void policy for want of an insurable interest in the plaintiff at all times after the deed to Tice was delivered? We think certainly not. To permit such a defense to be made would be highly inequitable and unjust.

The policy was a perfectly good and lawful contract of insurance when it was made, and continued so to be without question up to the time of the sale, and both parties continued to treat it as such until the time of the fire. It was never an instrument void ab initio, as was held by the court below, and therefore never needed an infusion of new life. It is in no sense analogous to the case of a policy effected originally by a judgment creditor, nor to a policy held over after a sale voluntarily by the insured. But it was a valid existing policy at the time of the sale, continued in force by. the voluntary agreement of both parties to the time of the fire. We cannot see how a clearer case of estoppel than this could be made out in any cause.

In the case of Mentz v. Lancaster Fire Ins. Co., 79 Pa. 475, the company's agent told the policy holder that the proper indorsement on the policy had been made, and we held the company bound by the declaration of their agent on the principle of estoppel. Said SHARSWOOD, J., delivering the opinion, " Now such a declaration made by a duly authorized agent or officer would clearly operate as an estoppel. It lulled the party to sleep by the assurance that the conditions of the policy had been complied with, and that his indemnity was secured." The present case is much stronger than this because here the company fully ratified the action of their secretary by treating the policy as actually in force, and declaring and collecting assessments upon it for three years after the sale. If it was in force for the purpose of collecting assessments upon it, it was certainly in force for the purpose of paying the loss, for securing indemnity against which those assessments were paid by the plaintiff and received by the defendant. In our opinion it would be perpetrating a gross wrong to take any other view of the undoubted facts of the case.

In Wachter v. The Phœnix Assurance Co., 132 Pa. 428, the

insured went to the agent of the company, informed him of the sale of the property, inquired in regard to the transfer of the policy to Wachter, the mortgagee, and was assured by the agent that it was all right as it was, and that nothing more need be done. The company sought to avoid payment because the sale of the property without a transfer or indorsement on the policy rendered it null and void. We held the company estopped from setting up such a defense. The present chief justice delivering the opinion, said : " In view of the undisputed facts the defense is a most ungracious one, a defense which under the circumstances no reputable underwriter would think of interposing." And so we say here, this company demanded and received from this plaintiff, as the lawful holder of this policy, all the benefits and advantages which it was entitled to receive under it as a valid subsisting policy, up until the moment of the fire, and it would be a perversion of justice to permit it now to deny its liability and to allow it to escape the payment of its just dues under the contract. That is precisely what estoppel means.

The judgment is reversed, and judgment is now entered on the verdict in favor of the plaintiff and against the defendant for the sum of four hundred and fifty-three dollars and six cents as of the 16th day of October, 1894, with costs of suit.