## Levinton et al., Appellants, *v.* Ohio Farmers Insurance Co.

*Insurance—Fire insurance—Description of property—Construction of contract — Doubt — Statement of subagent's employee — Waiver—Endorsement or policy—Estoppel—Custom—Evidence.*

Fire insurance policies described the property insured as being "merchandise, stock, materials and supplies, chiefly broom corn, their own or held in trust or on consignment or sold but not removed, contained in a frame warehouse building detached about 100 feet from factory." On account of its defective condition the warehouse was torn down and two smaller buildings erected, No. 1 on the site of the old building, and No. 2 some 100 feet from No. 1, and about the same distance from the factory. During the construction, the broom corn was removed to near-by barns, and, upon the completion of the buildings, it was removed to the new warehouse, No. 1 receiving the broom corn for immediate use, and No. 2 that for storage. During the construction period the change on the policies was provided for by a "binder," and when the new warehouses were completed the binders were removed and specific insurance was taken out on No. 1 and No. 2; and the old policies were put in force "to cover as originally written." Later the contents of No. 2 were destroyed by fire, and it was claimed that the loss was covered by the original policies, or that the company was estopped from asserting the contrary, because a counterman, an employee of the insurance company's subagent, said, when the binders were cancelled and the new arrangement was made, that "the form was broad enough to cover any warehouse around there,

that is a frame warehouse." The policy provided that the company should not be bound by any waiver of any condition of the policy by an agent or other representative unless the same were endorsed thereon or added thereto. There was no evidence that the counterman was authorized to make the statement which he did. *Held:*

(a) That the original policies did not cover the broom corn contained in warehouse No. 2.

(b) That the endorsement on the policies "policy to cover as originally written" covered the broom corn in the warehouse first described and afterwards rebuilt.

(c) That the words of the counterman were a mere expression of opinion.

(d) That even if the words of the counterman were more than the expression of an opinion they did not bind the company in view of the express stipulation of the policy as to waivers by agents and representatives.

(e) That it was proper to reject an offer to prove by custom that the policy covered the contents of building No. 2, where there was nothing to show that the counterman had authority to waive by parol the conditions of the policy, nor any attempt to prove such custom.

2. In such case to determine whether the policies insuring the broom corn in the premises as described, will cover a part of the same broom corn contained in building No. 2, regard must be had to the meaning of the language employed, the apparent purpose of the parties, the situation and uses of the property, and the nature of the contract as evidenced by the policy. Recovery can be had only when the loss is brought fairly within the terms of the contract or by reasonable intendment covered by it.

3. If doubt exists as to the meaning, it should be resolved in favor of the assured rather than in the interest of the insurer.

Argued March 25, 1920. Appeal, No. 279, Jan. T., 1920, by plaintiffs, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1918, No. 4352, refusing to take off nonsuit, in case of William and J. Levinton, trading as Union Novelty Manufacturing Co., v. Ohio Farmers Insurance Co. of Le Roy, Ohio. Before BROWN, C. J., MOSCHZISKER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

At the trial the trial judge entered a compulsory nonsuit which the court subsequently refused to take off. Plaintiff appealed.

*Error assigned,* inter alia, was refusal to take off nonsuit, and rejection of offer of evidence noted in the opinion of the Supreme Court, quoting the record.

*Arthur S. Arnold,* for appellant.—As a party to a contract of insurance is indemnified against loss by fire, if the provisions of the contract are susceptible to two or more interpretations, that one should be adopted that will make the contract effective for the protection of the insured: McKeesport Machine Co. v. Ben Franklin Ins. Co., 173 Pa. 53; Line Lexington Ins. Co. v. Eastburn, 3 Walker 88; Meadowcraft v. Standard F. Ins. Co., 61 Pa. 91; W. & A. Pipe Line v. Home Ins. Co., 145 Pa. 346; Graybill v. Penn T. Mut. F. Ins. Co., 170 Pa. 75.

In Pennsylvania it has often been decided that in spite of the provisions of the policies, an agent may bind his company by a parol waiver: Imperial Fire Ins. Co. v. Dunham, 117 Pa. 460; McFarland v. Kittanning Ins. Co., 134 Pa. 590; Burson v. Fire Assn., 136 Pa. 267; Dowling v. Merchants Ins. Co., 168 Pa. 236; Mix v. Royal Ins. Co., 169 Pa. 639; Spring Garden Ins. Co. v. Scott, 1 Walker 181; Highlands v. Lurgan Mut. F. Ins. Co., 177 Pa. 566.

*Horace Michener Schell* and *Albert L. Moise,* with them *Walter Biddle Saul,* for appellee.

OPINION BY MR. JUSTICE KEPHART, May 26, 1920:

Plaintiff owned a broom-making plant, which, at the time the policies here sued on were taken out, consisted of a factory, a small bleaching house and a large warehouse 30 by 150 feet, the latter building situate about 100 feet from the factory building. Insurance was placed on a part of this property by the defendants, the

policies covering all "merchandise, stock, materials and supplies, chiefly broom corn, their own or held in trust or on consignment or sold but not removed, contained in frame warehouse building detached about one hundred feet from Factory Building, Atco, Camden County, New Jersey."

In February, 1918, because of its defective condition, the warehouse was torn down and two smaller buildings erected: No. 1, situate on the site of the old building, and No. 2, located about 100 feet from No. 1 and about the same distance from the factory building. During the period of construction, the broom corn was removed to near-by barns, and upon the completion of the buildings it was returned to the two new warehouses. No. 1 contained the broom corn for immediate use and No. 2 that for storage. When the broom corn was deposited in barns during the construction, the change on the policies was provided for by a writing called a "binder," and, when the new warehouses were completed, the binders were removed and specific insurance was taken out on No. 1 and No. 2; and the old policies were put in force "to cover as originally written." Later, the contents of building No. 2 were destroyed by fire and it is claimed that the loss was covered by the original policies of insurance, containing the above clause, or that the company was estopped from asserting the contrary, because of statements made by the counterman, an employee of the defendant's subagent.

To determine whether the policies insuring merchandise in the premises herein mentioned (issued when such merchandise was contained in a building situated as described), will cover a part of the same merchandise contained in another building (erected as above stated subsequent to the issuance of the policies), regard must be had to the meaning of the language employed, the apparent purposes of the parties, the situation and uses of the property, and the nature of the contract as evidenced by the policy. Recovery can be had only when

the loss is brought fairly within the terms of the contract or by reasonable intendment covered by it. If doubt exists as to the meaning, it should be resolved in favor of the assured rather than in the interests of the insurer. The Standard Policy Act does not modify this principle, as the subject-matter of insurance is expressed in the language of the insurer. The plain provisions of the policy insured broom corn, contained in the frame warehouse building 100 feet from the factory building. This language is clear and unambiguous and cannot be construed to mean otherwise than what it says. Had it been an agreement of sale, it could hardly be contended that it would include broom corn in another building. If it was not the continuing presence of the broom corn in the building mentioned, why the necessity of adding the words "but not removed" after "broom corn......held in trust or on consignment or sold," and why was authority given to make additions, alterations and repairs to the building and this policy to cover the same (broom corn), if the insurer did not intend to limit its liability to broom corn contained in the frame warehouse building detached about 100 feet from the factory building? The language was not merely descriptive of the subject-matter, but the words used, with other facts quoted, make it a direct provision not only as to location at the time of insurance but also that the things insured would continue to remain there: Lycoming County Ins. Co. v. Updegraff, 40 Pa. 311; Haws v. St. Paul F. & M. Ins. Co., 130 Pa. 113; Harris v. Royal Canadian Ins. Co., 53 Iowa 236. It may be that a policy can be framed so that statements with regard to the use and character of the building will be merely descriptive or an identification of the risk at the time of insurance, and not a warranty that there shall be no change during the life of the policy: Wood on Insurance, 444 and 446; but this is not such a case, as the primary object was the insurance of the merchandise as it was contained in such building.

When the broom corn was returned from the barn and the binders cancelled, appellant was assured by the counterman, an employee of the defendant's subagent, that "the form was broad enough to cover any warehouse around there, that is a frame warehouse." This language, it is contended, estopped the defendant from asserting that warehouse No. 2 was not within the policies of insurance. One would scarcely consider the language as an expression of a considerate judgment on a question of so much importance. There was no limit as to the location of the warehouses. It might have included such houses at any place in Atco. It in no way considered the risk or hazard to be encountered and whether the company was assuming more or less by reason of the location of the warehouse. The language used is nothing more than the expression of an opinion: Smith v. West Branch Mutual Fire Ins. Co., 31 Pa. Superior Ct. 29; Hottner v. Aachen & Munich Fire Ins. Co., 31 Pa. Superior Ct. 461; Devaney v. Northwestern National Ins. Co., 64 Pa. Superior Ct. 510. Moreover, the plaintiff was put on notice by the policy itself when it said that "no officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured, unless so written or attached." The company may be estopped by the authorized acts of its agents and by the misrepresentation of its general agents: Mentz v. Armenia Fire Ins. Co., 79 Pa. 478; Wachter v. Phœnix Assurance Co., 132 Pa. 428; Light v. Countrymen's Mutual Fire Ins. Co., 169 Pa. 310; Highlands v. Lurgan Mutual Fire Ins. Co.,

177 Pa. 566; Smith v. West Branch Mutual Fire Ins. Co., supra. But it is not contended that the acts of the subagent's counterman were authorized (American Underwriter's Assn. v. George, 97 Pa. 238; Marland v. Royal Ins. Co., 71 Pa. 393, 397) or that there was a misrepresentation by the general agent; and, if we assume in this case that it might be done, it certainly was not done by the use of such general and indefinite language as here employed. Nor do we consider the adjustment of the terms as an assertion of the acceptance of the policies under conditions that could apply only to both new buildings. Specific insurance was thereafter taken out on the broom corn in building No. 1 and building No. 2, and when the binders were cancelled the endorsement on the policies read "Policy to cover as originally written." This covered the broom corn in the warehouse as first described and afterwards rebuilt. The rerating did not affect the insurer's liability as first undertaken. The offer to prove by custom that the policy covered contents of building No. 2 was properly rejected. There was nothing on the record to show that the counterman or subagent had authority to waive by parol the conditions of the policy, nor was there any attempt to prove such custom. As the record stood, it was not error to reject the offer.

The judgment is affirmed.