## Gibney v. Equitable Life Assurance Society of United States.

*A. G. Kelbling* and *L. M. Sebring,* for plaintiff.

*McCook & Jarrett, Carl W. Warmcastle* and *Moorhead & Marshall,* for defendant.

McConnel, J., April 11, 1929.—The plaintiff, Ida C. Gibney, brought an action in *assumpsit* against the defendant on account of a policy of group insurance issued by the Equitable Life Assurance Society of the United States to the Union Drawn Steel Company of Beaver Falls, Pa., claiming that her husband, Thomas Gibney, had died while he was in the employ of the Union

Drawn Steel Company, and that she, being his beneficiary, was entitled to the amount of his life insurance. The trial of this case resulted in a verdict for the plaintiff. The defendant has made a motion for judgment *n. o. v.* and also for a new trial.

The evidence showed that on Dec. 20, 1920, the defendant had issued a group policy to the Union Drawn Steel Company which provided for insurance upon the lives of such employees of the Union Drawn Steel Company as are enumerated in the record known as the Insurance Register of said employer, kept by the society in the amounts recorded therein for their respective names, for the term of one year from the register date thereof, or for such part of said term as they should respectively remain in the employment of the employer. The contract of insurance also contained, among others, the following provisions:

### TRAVEL, RESIDENCE AND OCCUPATION.

There are no restrictions under this contract on travel, residence or occupation except that military or naval service in any capacity in time of war by any employee insured hereunder is a risk not assumed by the Society, unless the Employer retains the employee engaging in such service upon the payroll or roster of employees for active work upon termination of the service, and pays to the Society during the continuance of the service the premiums for the insurance on the life of such employee and such extra premium or premiums as may be fixed by the Society, and unless notice that the employee has entered upon military or naval service shall be given to the Society in writing within thirty-one days after the employee enters upon such service.

### PREMIUMS.

This insurance is granted in consideration of the payment to the Society on the First day of each month of the average rate per thousand dollars of insurance in force under this contract according to the scale of premium rates given below on the basis of the attained ages (nearest birthday at the register date) of employees insured and the respective amounts of insurance on their lives.

### SPECIAL PROVISIONS.

1. The insurance upon the life of any employee covered by this contract shall continue only so long as such person remains in the employment of the Employer. All liability and obligation of the Society with respect to any such employee shall cease and determine immediately upon the termination of such person's employment with the Employer, without regard to the cause of such termination, except that temporary leave of absence on military or naval service as set forth in the clause: "Travel, Residence and Occupation" on the second page of this contract, or total disability under the conditions named below, shall not constitute termination of employment within the meaning of this clause.

5. The Society will issue to the Employer for delivery to the employee whose life is insured under this policy, an individual certificate setting forth a statement as to the insurance protection to which such employee is entitled under the terms hereof, and to whom it is payable, together with a provision to the effect that in case of the termination of the employment for any reason whatsoever the employee shall be entitled to have issued to him by the Society, without further evidence of insurability and upon application made to the Society within thirty-one days after such termination and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance in any one of the forms customarily issued by the Society, except term insurance, in an amount equal to the amount of his protection under this policy at the time of such termination.

6. Upon termination of employment as shown by the Employer's records, the insurance upon the life of any employee terminates automatically, unless continued under the individual conversion option. For purposes of insurance, re-employment will be classed as new employment and will be subject to all the requirements thereof and the issuance of a new certificate.

In accordance with the provisions of this policy of insurance, the defendant issued to Thomas Gibney an individual life certificate on Nov. 6, 1924, and this certificate contained the following provisions:

The Equitable Life Assurance Society of the United States
Individual Certificate No. 0755 (Life) 1803.

hereby certifies that the Union Drawn Steel Company, Beaver Falls, Pa. (hereinafter called the Employer), has contracted to insure the life of Thomas Gibney (hereinafter called the employee) for the sum of $750 with the Equitable Life Assurance Society of the United States by a policy of Group Life Insurance. The insurance is to be payable as follows: $150 for funeral expenses and the remainder in twelve equal monthly payments, commencing upon the receipt of due proof of death, to the beneficiary designated as entitled to receive the same, if death occur while in the employment of the said Employer and while insured under said policy, subject to the terms and conditions thereof.

Beneficiary: Ida C. Gibney—Wife.

Termination and Conversion: The insurance of any Employee shall automatically cease and determine upon termination of employment with the Employer in the specified classes of employees; but in case of such termination of employment for any reason whatsoever while insured, the Employee shall be entitled to have issued to him by the Equitable without further evidence of insurability upon application made to the Equitable within thirty-one days after such termination and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then attained age, a policy of life insurance, in any one of the forms customarily issued by the Equitable, except term insurance, in an amount equal to the amount of his protection under such Group Insurance policy at the time of such termination. For purposes of insurance, re-employment will be classed as new employment.

Thomas Gibney was employed by and worked for the Union Drawn Steel Company at various times and for various periods prior to Feb. 22, 1926, and died March 14, 1926. The plaintiff contended that at the time of his death he was still in the employment of the Union Drawn Steel Company, and that his beneficiary was entitled to the payment of the amount of his insurance, which had been increased from $750 to $850 before Feb. 22, 1926. The defendant contended that at the time of Thomas Gibney's death he was not in the employment of the Union Drawn Steel Company, and, therefore, under the terms of the policy of insurance, his beneficiary was not entitled to anything.

The evidence on the part of the plaintiff as to his working or being in the employment of the Union Drawn Steel Company was that Thomas Gibney had been in the employ of the company for about a year before Feb. 22, 1926, and that he was still in the employment of the company at that time, but it also showed that on that date he was laid off by his foreman, and he was told that he was laid off owing to a depression in the business of the Union Drawn Steel Company, and he was also told that no one could tell how long he would be laid off. After he was laid off, he was told by his foreman that when they needed him again he would be notified when to come back to work. After Feb. 22, 1926, he called at the office of the Union Drawn Steel Company several times and was told that they had no need of him yet and could not give him a definite answer as to when he would be taken back to work, and that whenever they would need him, he would be notified and re-employed. It was also shown that on Feb. 22nd, at the time Mr. Gibney was laid off, a part of the works of the Union Drawn Steel Company in which he had been employed had been discontinued, and after that time that part of the plant had been dismantled and the same kind of work at which he had been employed had not been resumed by the Union Drawn Steel Company at the time of his death, and the only relationship existing between him and the Union Drawn Steel Company, at the time of his death, was that he had been notified by his foreman that he would be re-employed as soon as they had any work for him to do.

The plaintiff did not introduce the employment record of the Union Drawn Steel Company with regard to Thomas Gibney, but on the part of the defendant these employment records were introduced and admitted in evidence.

These records consisted of an employment record which is printed on page 50 of the evidence. This showed that Thomas Gibney had been employed as a helper and a fireman from Feb. 24, 1925, at the rate of 45 cents per hour, and afterward at 49 cents per hour. It was shown that he was paid every two weeks according to the number of hours he worked, and his employment record showed that he was laid off Feb. 22, 1926. There was also offered in evidence, by the defendant, exhibit "D," which was known as Thomas Gibney's leaving card. It had on it the following: "Left our employment on 2/22/26. Would you re-employ? Yes. Did employee give notice of leaving? Laid off. Laid off—account no work." His time card was also offered in evidence, and admitted, which showed that during the month of February he had only worked on Feb. 22nd for ten hours and was then laid off.

Other evidence introduced on the part of the defendant showed that Thomas Gibney was not discharged permanently, but was only laid off temporarily, and that meant that the employee was subject to call at any time and would be re-employed if they had any work for him to do.

The evidence, then, for both the plaintiff and defendant in this case showed that on Feb. 22, 1926, Thomas Gibney had been laid off and had not been told to come back to work and had not come back to work for the Union Drawn Steel Company at any time between Feb. 22, 1926, and the date of his death, and the question was whether, at the time of his death, he could be still considered, under the terms of this insurance policy, in the employ of the Union Drawn Steel Company and still entitled to insurance. As it was, so far as we could see, a new question, out of an abundance of caution, we allowed the case to go to the jury on the sole question of whether Thomas Gibney was still in the employ of the Union Drawn Steel Company at the time of his death. The verdict of the jury determined that he was still in the employ of the company; but we must determine, under this motion, whether there was really any evidence produced in the case under which we could have submitted that question to the jury, and whether there was any evidence produced which would sustain the verdict.

Thomas Gibney was only a day laborer, paid at an hourly rate and paid every two weeks. Of course, the insurance policy involved in this case, like the ordinary contract of insurance, is to be reasonably construed so as to accomplish the purposes which the parties to the policy had in view at the time the contract was made; but at the same time, as said by Mr. Justice Kephart, in delivering the opinion of the court in the case of Levinton v. Ohio Farmers Insurance Co., 267 Pa. 448 (page 451): "Recovery can be had only when the loss is brought fairly within the terms of the contract or by reasonable intendment covered by it. If doubt exists as to the meaning, it should be resolved in favor of the assured rather than in the interests of the insurer."

Ordinarily, also, the construction of the insurance policy is for the court. That is, it is for the court to determine what a policy of insurance, like any other written contract, means. The burden was upon the plaintiff to prove by a fair preponderance of the evidence that Thomas Gibney, at the time of his death, was in the employ of the Union Drawn Steel Company and entitled to insurance under the policy in question.

There are many questions which might be raised and considered by the court under the insurance policy in question as to what ordinarily constitutes employment; whether the employee is entitled to protection on this insurance policy in case the factory in which he works, or any department thereof, ceases to operate on account of a stoppage for repairs; and whether the only proof of the employment of Thomas Gibney was the record of the Union

Drawn Steel Company, and whether the employee could dispute these records and show that as a matter of fact he was in the employ of the company, although the records of his employer showed that he was not in their employ. These questions we do not undertake to pass upon in this case, and all we undertake to determine is whether, at the time of the death of Thomas Gibney, he was still, under the evidence in this case, in the employ of the Union Drawn Steel Company.

As we see it, the policy of insurance in this case is different from an ordinary life policy, and is also different from workmen's compensation, and it occupies a position midway between the two. Under the Workmen's Compensation Act, an employee, in order to be entitled to compensation, must ordinarily be engaged in some work which is in furtherance of the business of the employer; but under the policy in question in this case, we do not think that is necessary at all. He would be certainly entitled to insurance under the terms of this policy as long as the relationship of master and servant or employer or employee existed, and that condition would exist during the time from evening to morning; from Saturday to Monday, or during any other reasonable period when he might be still considered in the employment of his employer, even though he was not at that time actually laboring for his employer. But in order to constitute an employment there must be some sort of a contract existing at the time of the employee's death on the part of the employer to hire the workman and on the part of the employee to perform services for his employer as they should be required.

The evidence, as we have said, clearly establishes the fact that on Feb. 22, 1926, Thomas Gibney was laid off by the Union Drawn Steel Company, and, according to Webster's Dictionary, laid off means: "To cease work; to cease to operate or employ, especially to cease to employ or discharge a workman, often temporarily." In the Century Dictionary laid off is defined: "To dismiss as a workman, usually temporarily." Usually, when a man is laid off, as we understand the term, he is no longer in the employ of his employer and can, if he chooses, work for some other person, but may be recalled by his employer at any time, and if the workman chooses he can return to his employer or can refuse to do so. It is, of course, different from discharge, but, nevertheless, it is a temporary discharge, and, as we see it, constitutes a cessation, temporarily, of employment.

The policy of insurance in this case contains a rider dated July 3, 1924, under which it is agreed between the insurance company and the Union Drawn Steel Company that the policy of insurance is extended to cover the lives of the employees of the Union Drawn Steel Company who may be pensioned or retired. This was evidently attached to the policy so that there could not be any question raised as to its meaning in this respect, and that indicates that the pay-roll kept by the Union Drawn Steel Company was not considered by the parties as determining absolutely who would be entitled to insurance under the terms of it, because, even if the parties were pensioned or retired, they would still be on the rolls of the Union Drawn Steel Company and entitled to periodical payments from them.

If there was any doubt under the evidence as to whether Thomas Gibney was or was not laid off on Feb. 22, 1926, this would, in our opinion, have been a question for the jury to pass upon; but as the sole matter before the court, under the evidence, was the meaning of "laid off," we believe that the question was for the court and not for the jury.

The group insurance policies issued by insurance companies to corporations are comparatively a new thing and we have only been able to find one case in

this State where the group insurance policy was even considered, and that is a case decided by Judge Hargest and reported in Stoner v. Equitable Life Assurance Society of the United States, 28 Dauphin Co. Reps. 235. In that case, a group insurance policy was issued by the Equitable Life Assurance Society to a manufacturing corporation operating a plant in Harrisburg. Under this policy a certificate was issued to Franklin A. Stoner, who named the plaintiff in that case as beneficiary. On March 28, 1924, the hot mills of that plant were closed down and the employees were notified that the plant would not resume operations during the month of April and that the company was unable to announce a definite date of resumption, but the workmen were assured that the mill would be started in operation as soon as trade conditions would justify such action. The hot mills never did resume, but Franklin A. Stoner, being in the shipping department, continued work until April 12, 1924. At that time the manufacturing company notified the Equitable Life Assurance Society to terminate the insurance as to a number of employees, including Franklin A. Stoner, as of April 12, 1924. Franklin A. Stoner died June 25, 1924. It was claimed by the plaintiff that the employee was still in the employ of the manufacturing company at the time of his death because his death had occurred within a reasonable time after the plant had shut down indefinitely; and also that the policy of insurance could not be terminated without notice to the insured, that is, Franklin A. Stoner. These points were both decided against the plaintiff, and so far as the matter of employment was concerned, Judge Hargest said (28 Dauphin Co. Reps. 235, page 240) : "Nor do we think the evidence was sufficient to support the finding of the jury that Stoner continued in the employment of the company up to the time of his death. Stoner was employed by the company upon an hourly basis and paid every two weeks. He was notified that the plant would indefinitely suspend operations on March 29, 1924. By reason of his employment in the shipping department, he was continued until April 12, 1924, and thereafter was not employed. This policy was in force 'only so long as such person remains in the employment of the employer.' One paid upon an hourly basis cannot be said to be in the employment of his employer so as to keep alive a policy of this character, where the plant has been shut down indefinitely and ceased operations for a period of more than a month and a half."

While, of course, we are not bound by this decision of Judge Hargest, we are satisfied that he correctly decided that case, and we are also satisfied that in the present case when Thomas Gibney was laid off he was temporarily discharged and no longer in the employment of the Union Drawn Steel Company and, therefore, his beneficiary was not entitled to recover against the defendant. We have found a number of cases where group insurance policies were involved and considered and interpreted in jurisdictions outside of the State of Pennsylvania, but we have found none which, in our opinion, bear, even remotely, upon the questions involved in this case.

So far as the motion made by the defendant for a new trial is concerned, we do not feel that it is necessary, under the disposition which we make of the case, to consider the questions so raised by the defendant.

*Order.*

Now, April 11, 1929, judgment is hereby directed to be entered for the defendant, the Equitable Life Assurance Society of the United States, and against the plaintiff, Ida C. Gibney, notwithstanding the verdict. The motion for a new trial is also hereby overruled.

From William F. Schutte, Beaver Falls, Pa.