## PENNA. TRAINING SCHOOL v. INDEPENDENT · INS. CO.

### ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued March 19, 1888—Decided October 7, 1889.

Where the charter of a mutual fire insurance company provided that the managers of the company, when they made an assessment upon policy holders, should "publish the same," and this notice was referred to in other parts of the incorporating act as a "public notice," and as "advertising an assessment," advertisement in a newspaper is the kind of notice required: Lincoln v. Wright, 23 Pa. 76, and Sinking Springs Mut. Ins. Co. v. Hoff, 2 W. N. 41, distinguished.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No 117 July Term 1886, Sup. Ct.; court below, No. * * * March Term 1884, C. P. No. 2.

On March 20, 1884, The Pennsylvania Training School for Feeble Minded Children brought covenant on a policy of fire insurance against The Independent Mutual Fire Insurance Company of Philadelphia, Bucks and Montgomery counties.

At the trial on April 26, 1886, it appeared that the policy in suit was issued to James Devereaux in December, 1858, and was transferred to the plaintiff in March, 1879. On September 6, 1880, an assessment was made of twenty cents, and on September 5, 1881, an assessment of fourteen cents on each $100 of the amount insured. On August 22, 1882, the insurance was suspended for non-payment of the assessments for those two years. A fire which destroyed the insured property occurred on August 30, 1883.

The provisions of defendant company's charter: act of February 10, 1843, P. L. 13; supplements, February 12, 1844, P. L. 38; April 14, 1851, P. L. 619; February 21, 1862, P. L. 135, relating to the levying and notice of assessments are as follows:

"Section 6. . . . . And when the just demand of any insurer in said company, or member thereof, shall exceed the amount of its available funds on hand, such sums as shall be necessary to pay the same shall, without unnecessary delay, be assessed by any three of the managers, appointed by the president, on the insurances, each member to pay in proportion to the amount he has insured, and publish the same, and all and every of the members of the company shall pay into the hands of the treasurer, his, her or their proportionate parts of such rates, within sixty days, after such publication as aforesaid, and in default thereof, shall be proceeded against according to the provisions of this act.

"Section 7. That in default of the payment of rates as mentioned and provided by this act, it shall be lawful for the president, managers and company to proceed and collect the same as debts of like amount are now collected by law, without stay of execution; and if any members shall refuse or neglect to pay his, her or their respective tax or assessment, for the space of sixty days from the time public notice is given of the time and place for the payment of the same, his, her or their insurance shall be suspended, and his, her or their property, shall not be protected by said company until said tax or assessment is paid; and, in the case of all delinquents, when a tax is laid, or assessment made, and the sixty days having expired, the treasurer shall have power to collect, or to appoint one or more suitable persons to complete the collections, and ten per cent may be added for compensation for collecting; public notice of this clause to be given, when advertising an assessment made, and how the same will be collected."

Other facts in the case appear in the opinion of the Supreme Court and in the charge of the court below, FELL, J., which was in part as follows:

It is not in dispute that the assessments for 1880 and 1881 were made as required by the charter. Notice of the assess-

Charge of Court below.

ments, and of the time and place of payment, was given by publication in the principal newspapers printed and circulated in the district in which the company did business, and by the posting of hand-bills in the district, and by sending postal cards to the insured whose addresses had been furnished the defendant.

The actual address of the plaintiff was a post-office in Delaware county, Pa. This address had never been given to the defendant. When the policy was sent by the plaintiff's conveyancer to the insurance company for the approval of transfer in 1879, a memorandum indorsed on the envelope requested him to send it to Joseph K. Wheeler, 2026 Chestnut street, Philadelphia, but no address of the training school has ever been furnished.

After the fire, and after the plaintiff had been informed by the secretary of the insurance company that the policy was not in force, he sent by letter to the secretary of the insurance company the amount of the assessments due. There is no evidence of the acceptance of this by the company. The evidence is that it was not accepted. It was received by the secretary, who soon after died, and was found among his papers. The treasurer or the board of directors knew nothing of it. The plaintiff did not know of the assessments of 1880 and 1881, and did not know the character of the company in which his property was insured.

The contention has been narrowed to this : Was such notice given by the defendant as is required by its charter and by-laws? The notice required is by publication and public notice. The advantage of this kind of insurance is its cheapness. Its disadvantage, the burden upon the insured of knowing when assessments are due. Actual notice is not necessary. If it were, it would be impossible to conduct the affairs of the company. While the sending of postal cards is not required by any provision of the charter or rules of the company, as a means of notice, and has been done only a few times, yet being done it might create a custom on which the insured could rely.

[If the defendant gave the notice required by the charter, by posting hand-bills and by publication in the principal newspapers published and circulated in the district in which its business was done, and also sent postal cards containing printed

notices to the address of the insured, furnished and known to it, it did its whole duty in the matter.] [2]

The jury returned a verdict in favor of the defendant. A rule for a new trial having been refused, judgment was entered on the verdict; thereupon the plaintiff took this writ, assigning as error, inter alia:

2. The portion of the charge embraced in [ ] [2]

*Mr. John M. Broomall*, for the plaintiff in error.

*Mr. Henry K. Boyer* (with him *Mr. J. Quincy Hunsicker*), for the defendant in error.

OPINION, MR. JUSTICE GREEN:

The only question in this case is as to the sufficiency of the notice of assessments. A notice in proper form was published about seven times in nine different newspapers, covering the territory within which the defendant's policies were issued, and two of the newspapers were published within two miles of the building burned. There were also hand-bills posted in neighborhoods where there were policies. The charter of the company directs that the managers of the company, when they make an assessment, shall "publish the same," and that the members shall "within sixty days after such publication" pay their assessments, "and in default thereof shall be proceeded against according to the provisions of this act." The seventh section of the act provides the method of procedure in case of default, and concludes thus: "public notice of this clause to be given when advertising an assessment made and how the same will be collected." It will be seen that the notice to be given is to be a "public notice," and it is described in the act as "advertising an assessment." We think it quite plain that notice by advertisement in a newspaper is the kind of notice required by the charter to be given. That kind of notice was abundantly given all over the region of country in which the plaintiff's barn was situated. There is no requirement that a notice shall be served upon each individual member every time an assessment was levied, nor was a notice by mail prescribed. The notice was to be *public*, which is distinguished from pri-

vate, and, in so far, the provisions of the law were complied with. Not actual notice but notice by publication is the kind of notice directed by the law.

The case of Lincoln v. Wright, 23 Pa. 76, has no application. It simply decides that a statement of the occurrence of a fact in a newspaper as a matter of news is not notice in the legal sense to anybody. In the case of Sinking Springs Ins. Co. v. Hoff, 2 W. N. 41, the question whether publication in a newspaper alone of an assessment upon the premium notes of the members was sufficient, was not decided and was so expressly stated. It was only decided that the forfeiture of the policy by the directors was premature, and that notice of the *forfeiture* by publication in a newspaper was not actual notice. There was a provision in the charter for forfeiture for non-payment of assessments, but there was no provision for giving notice of the forfeiture to members. There was therefore nothing which dispensed with the necessity for actual notice. The charter of the defendant, in the present case, contains a provision in regard to the forfeiture, or suspension, rather, of the policies of delinquent members, which is not contained in the charter of Sinking Springs Company. It is found in the seventh section, and is in these words : " And if any member shall refuse or neglect to pay his, her or their respective tax or assessment for the space of sixty days from the time public notice is given of the time and place of the payment of the same, his, her or their insurance shall be suspended," etc. It will be seen that the suspension of the policy follows non-payment by force of the law, and without any act of the directors as in the Sinking Springs Case. It is therefore only necessary to know whether the default for sixty days has transpired from the time the " public notice " of the time and place of the payment of the assessment was given. As this default had very largely exceeded the sixty days, the suspension of the policy followed by force of the charter.

There was no actual payment of the assessments after the fire, which was received by the company. The money was sent to the secretary who replied that when he heard from the attorney of the company he would more fully answer the letter of the plaintiff's treasurer. The money was never paid to the company and was not even accepted by the secretary. He died

soon after and the money and letter of the plaintiff's treasurer were found among his papers after his death.

Judgment affirmed.