## Gonder *v.* Lancaster County Mutual Fire Insurance Company.

*Insurance—Mutual fire insurance—Assessments—Notice—Forfeiture.*

Where a policy of a mutual fire insurance company provides that if assessments are not paid after sixty days' public notice, the insurance shall be suspended, and it appears that a policy holder had neglected to pay assessments after sixty days' public notice, and after he had paid assessments of which he had personal notice on three other policies for other parties, of which he had charge, he cannot in an action for a loss incurred during his period of default aver as a ground for avoiding the forfeiture that he had no personal notice of the assessment. In such a case the policy holder was not only bound by the public notice, but it must be assumed that he had actual personal notice of the assessments. The fact that the policy was not formally marked void on the books of the company until after the fire, is immaterial.

Argued Dec. 13, 1900. Appeal, No. 161, Oct. T., 1900, by plaintiff, from judgment of C. P. Lancaster Co., Jan. T., 1897, No. 40, on verdict for defendant in case of B. B. Gonder v. The Lancaster County Mutual Fire Insurance Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit on a policy of fire insurance. Before LIVINGSTON, P. J.

At the trial the defendant claimed that the policy on which suit was brought had been forfeited for nonpayment of assessments. The plaintiff claimed that he had no personal notice of the assessments.

The court gave binding instructions for defendant.

Verdict and judgment for plaintiff.    Defendant appealed.

*Error assigned* was in giving instructions for defendant.

*W. U. Hensel*, for appellant.—The company's course of dealing was "a waiver of strictness," as to giving notice alone by advertisement in the weekly newspaper: Girard Life Ins. Co. v. Mutual Life Ins. Co., 86 Pa. 236; Helme v. Philadelphia Life Ins. Co., 61 Pa. 107; Swan v. Watertown Fire Ins. Co., 96 Pa. 37.

If the by-laws of the company providing for notice by newspaper advertisement, on the one hand, and the long established practice of the company, providing for individual notice, on the other hand, taken in actual connection with three notices served upon Gonder, and the failure to serve the fourth, leave the question in doubt, that construction must prevail which is most favorable to the insured.    At least the situation thus created must be referred to the jury: Tuetonia Life Insurance Co. v. Mund, 102 Pa. 89; Burkhard v. Travelers' Ins. Co., 102 Pa. 262; Lebanon Mut. Ins. Co. v. Hoover, Hughes & Co., 113 Pa. 591; Long v. North British Ins. Co., 137 Pa. 335; McMahan v. Sewickly Mutual Fire Ins. Co., 179 Pa. 52.

The drift of well considered opinions, outside Pennsylvania, is in the same direction: White v. Conn. Fire Ins. Co., 120 Mass. 330; Phœnix Mutual Life Ins. Co. v. Hinesley, 75 Ind. 1; Alexander v. Continental Ins. Co. of New York, 67 Wis. 422; Ins. Co. v. Eggleston, 96 U. S. 577; Farmers' Mut. Ins. Co. v. Mylin, 15 Atl. Repr. 710; Train v. Holland Purchase Ins. Co., 62 N. Y. 598; Home Protection of North Alabama v. Avery, 85 Alabama, 348.

*A. F. Hostetter*, with him *W. Leaman* and *Charles W. Eaby*, for appellee.—Without any action on the part of the company the neglect to pay the assessment had the effect of suspending the protection of the policy until the default was removed: Hummel & Co.'s App., 78 Pa. 324; Columbia Ins. Co. v. Buckley, 83 Pa. 293; Crawford County Mutual Ins. Co. v. Cochran, 88 Pa. 230.

The whole theory of appellant's argument is that he was

ignorant that an assessment had been made on his policy No. 14,896, and that the sending to him of notices on the other three of the policies without also sending on this had contributed to this ignorance, and thus to his injury. The exact reverse, however, is the truth. If he had not before known it, the very receipt of the three notices brought home to him knowledge that he owed the company money on the fourth policy: Washington Mutual Fire Ins. Co. v. Rosenberger, 84 Pa. 373.

OPINION BY ORLADY, J., May 23, 1901:

The plaintiff brought this suit on a policy issued by the defendant, a mutual insurance company, and on the trial the court gave the jury binding instructions to return a verdict in favor of the defendant. In addition to the policy in suit the plaintiff, an old member of this company, had charge of others which had been issued in 1890 and were as follows: No. 14344 issued in the name of his brother and himself on an office and carriage house; Nos. 14345 and 14346 in the name of his mother, Ann C. Gonder, on a barn belonging to her.

He subsequently stored personal property of his own in these buildings and took out insurance thereon in 1893 under a policy, No. 14896, on which this action is founded. The following is a description of the property so stored:

Personal property in barn of Ann C. Gonder
  insured in policy No. 14346  .   .   .   $600.00
Personalty in office and carriage house insured
  in policy No. 14344  .   .   .   .   .   $600.00
                                          ————————
                                          $1,200.00

On the last policy he paid the cash premium and gave his premium note, $60.00, to cover the assessments thereon.

The policy provided " that when an assessment is made to pay for losses to the company, any member neglecting or refusing to pay said assessment after sixty days' public notice, the insurance is suspended until the amount due, with ten per cent added for collection, be paid, but otherwise no neglect or refusal to pay such assessment and charges for collection will release the liability for the same."

The plaintiff admitted that he had read the policy of insurance

and was familiar with its conditions as to notice of assessments. It was proven on the trial that in addition to the manner provided by the policy for giving the sixty days' public notice (which was done by printing notices of the assessments in three newspapers, and three insertions each) in 1882 the company adopted a rule or regulation by which printed, special and personal notices of assessments were to be sent to its agents and served on each policy holder. There was no assessment on policy No. 14896 for the year 1893, but in 1894 and in 1895 the company levied assessments on all of its outstanding policies. Gonder received personal notice of the assessments on the three earlier policies, held by him, in 1894 and 1895 and paid the respective amounts to the local agent, but he never paid any assessment on the policy in suit, and explains that omission by denying that he ever received any personal notice from the company or its agent or ever saw any of the public notices of any assessment on that policy. This fact was disputed, the agent of the company claiming that notices of assessments on policy No. 14896 were sent with the notices on the earlier policies, and that personal notice was given to him of the fact that, owing to nonpayment of assessments, this policy was no longer in force. It is admitted, as contemplated by the policy, that public notices of the assessments of 1894 and 1895 were given by the company in newspapers, and this method has been held to be sufficient: Penna. Training School v. Independent Insurance Company, 127 Pa. 559. The court below held such form of notice to be adequate and instructed the jury as follows: "The plaintiff was a member of this mutual insurance company. He knew or should have known by reason thereof that its members were bound to pay assessments on policies. He did know assessments were made by this company, because he produces notices of assessments made on other policies held by him for others, at the time his own was in existence, . . . . and his failure or neglect to pay the assessment on his policy would place him in default, and prevent him from recovering for loss during such default." Assuming that the disputed fact in regard to personal notice of the assessment had been found in the plaintiff's favor, it would not save his claim. Considering the previous dealings and relations of the parties and the established manner of giving public notice as required by the contract, the most that can be claimed for the custom

of giving personal notice of assessments through local agents would be that it was additional and supplementary to the one he was compelled to recognize as binding on him. If the company had adopted two ways of giving such notices, either would be effective. The insured cannot ignore the public notice provided by his contract, nor the additional notices of assessments on other policies in the same company. To claim that he was misled into believing that no assessment was levied on policy No. 14896 for the years 1894 and 1895, when he had paid two assessments on three other policies in this mutual company, is to deny that which he must have inevitably known. The character of the company of which he was a member, his knowledge of the contract terms, that all policies were assessable, and his payment of the other assessments on property in which the personal property, covered by this policy, was stored, gave him actual knowledge that the company had sustained losses, and that his insurance in this particular policy was, owing to nonpayment of assessments, liable to be suspended. All the notices and receipts given to him contained the number of the policy, and mere inspection of them would have shown that he was not paying an assessment on this particular policy. He could not with any show of reason assume that he could have the benefit of insurance in this mutual company for two and a half years without being liable to an assessment while the other policies held by him were contributing their proportion of the losses sustained by the company. Personal notice of assessments is not contemplated by the contract; it implies that in order to protect his insurance the insured will be vigilant in observing the public notice.

The policy declared, and he must be presumed to have known, that without any action on the part of the company the neglect to pay the assessment had the effect of suspending the protection of the policy until the default was removed: Washington Mutual Fire Insurance Company v. Rosenberger, 84 Pa. 373.

Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party relied. Any agreement, declaration, or course of action on the part of the insurance company that would lead an insured party to believe honestly that by conforming thereto a forfeiture of his policy would not be in-

curred, would and should estop the company from insisting upon the forfeiture, although it might be claimed under the express letter of the contract: Insurance Company v. Eggleston, 96 U. S. 572. But, courts cannot avoid enforcing forfeitures when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party on which to base a reasonable excuse for the default. It must be a just and reasonable ground, one on which the insured has a right to rely: Thompson v. Knickerbocker Life Insurance Co., 104 U. S. 252.

In this case there is nothing to indicate any change of terms of the contract, any waiver of its conditions, any course of dealing or established practice, or mutual understanding on the part of the company and this plaintiff that would mislead a reasonable business man into believing that the general rule as indicated by the contract would not be enforced against him. The mutuality of the contract required him to discharge his part before he could demand performance by the company. The fact that the policy was not formally marked void on the books of the company until after the fire, is not material under the facts of this case. It was the continuing neglect of the insured, after he had knowledge that losses had been sustained and assessments had been levied, to pay them, and to which he contributed twice through three other policies, that prevents him from recovering for a loss which occurred during the period of his default. If the delinquent policy holder had paid and the company had accepted his assessments prior to the fire, the policy would have been restored to full life. During the default the contract relation is not wholly dissolved, but the protection of the policy is suspended until the default of nonpayment is removed: Columbia Insurance Co. v. Buckley, 83 Pa. 293.

The judgment is affirmed.