# Mills *v.* Pennsylvania Mutual Live Stock Insurance Company, Appellant.

*Insurance—Live stock insurance—Contract—Payment of premiums—Waiver—Proofs of loss—Conflicting evidence as to health—Case for jury.*

1. Where an owner of a horse is permitted, without payment of premium, to retain a policy of insurance on the horse, conditionally on his keeping the animal, and three months afterwards pays the premium to the company, and the company retains the same for two months, and then offers to return it after the death of the horse, the contract of insurance will be deemed to have become effective on the day that the company accepted the premium.

2. Where in an action on a policy of insurance on a horse the evidence is conflicting as to the condition and health of the horse on the day that the insurance became effective, the case is for the jury. In such a case the court cannot say as a matter of law that a mere cough from which the animal suffered was a condition of sickness within the meaning of the health clause in the policy.

3. Where the owner of a horse immediately after its death notifies by telephone an insurance company of the death of the horse which the company had insured, and the company at once sends its surgeon to make a post-mortem, and thereafter within sixty days notifies the insured that the policy will not be paid, the company cannot subsequently defend an action on the policy, because of the failure of the insured to give written notice of death or proof of loss within sixty days as specified in the policy.

Argued April 13, 1914. Appeal, No. 22, April T., 1914, by defendant, from judgment of C. P. Erie Co., Feb. T., 1911, No. 158, on verdict for plaintiff in case of S. Mills v. Pennsylvania Mutual Live Stock Insurance Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Appeal from judgment of justice of the peace.

Assumpsit on a policy of live stock insurance. Before WALLING, P. J.

At the trial it appeared that the plaintiff received from the defendant on April 22, 1910, a policy dated the same day, on a horse. The plaintiff not being certain whether he wanted to keep the horse, retained the policy conditionally, without paying the premium. On July 12, 1910, he sent the amount of the premium to the treasurer of the company, and the same was accepted. On July 22, the horse died, and the plaintiff immediately notified the company to that effect. The company at once sent its surgeon to make a post-mortem. On September 17, 1910, the plaintiff was notified that the company did not regard itself as liable for the loss, and the premium was returned to him. This he refused to accept, and brought suit.

The court charged in part as follows:

The application for the policy provides as follows: "And I, (meaning Mr. Mills) agree that said Company shall not be held liable for the death of any animal occurring from castration, nor any animal under six months old, nor for loss occurring through negligence or carelessness, nor for insurance obtained upon diseased live stock or on stock upon which fictitious value has been placed, nor for the death of any animal which is caused by authority or direction of any State or Government officer, or other officer, or any person claiming to act under or by virtue of any law, and the insurance desired shall not be in force until accepted by the Home Office, and the policy issued thereon. And I further agree that said insurance shall be null and void and so remain, if the note given for the premium on said insurance shall not be paid at maturity, or if no note is given, the premium remaining unpaid for more than thirty days after date of policy, and in case of loss under a policy issued on this Application, that the note given for the premium on said insurance shall immediately become due and payable, and shall be deducted from the amount of said loss, etc." [You see by that if the premium was not paid within thirty days the policy becomes null and void and so remains. Now thirty days from the date of the policy—this premium was not paid within thirty days from the date of the policy—therefore the policy became by its terms null and void. On July 12, Mr. Mills, the plaintiff, came to Erie and paid this premium to Mr. George W. Evans, secretary and treasurer of the defendant company, and Mr. Evans accepted the premium and the money was retained by the company until I believe September 19, 1910, when the company sent a check for the premium back to the plaintiff and the plaintiff returned it to the defendant company. The defendant did not offer to return the premium until September 19, that is, the defendant kept the premium for something

over two months.  I believe that the receipt of the premium by the company and its retention for that length of time would be facts justifying the jury in finding that there was a waiver on behalf of the company as to the payment within thirty days.  The company by accepting the money after the thirty days I believed waived— I believe you would have a right to find that that constituted a waiver; that by such acceptance and retention of the premium the policy became in force.  The company was not bound to insist upon payment within thirty days, although the policy was void until paid; but the payment and acceptance and retention of the premium by the company would justify you in finding that the company had waived that clause in the policy.  And if you so find, then the policy would be in force at the time this mare died on July 22, 1910.] [3]   Mr. Evans says the payment he thinks was made on the thirteenth; I believe that the receipt perhaps shows the twelfth.  It is not very material as to that.  If you find that the policy was in force, then the next question is: "Did the plaintiff give notice of the loss?"  The policy requires notice to be given immediately: it provides like this: "In case of loss under this policy the assured shall give notice thereof in writing to the company within 60 days, at its Home office, giving number of policy, shall complete or cause to be completed proofs of such loss as furnished by the company."  There was no notice in writing given; that part of the policy has never been complied with by the plaintiff.  But the plaintiff did give immediate notice over the telephone to the defendant company on the same morning the horse was found dead, and the president and general manager of the company took a veterinary surgeon and immediately went up and had a post-mortem held upon this dead animal, and before the expiration of the sixty days the company wrote the plaintiff denying all liability under the policy.  In our opinion under those facts the company cannot now insist upon the defense that no written proofs of

loss were submitted, especially as no such defense is made in the affidavit of defense.  [We instruct you that so far as proofs of loss were concerned that the plaintiff is entitled to recover.  Having given immediate notice, the defendant having acted upon that and come there and taken possession of the horse so far as to hold a post-mortem and then declined the loss absolutely in less than sixty days, we think that would excuse the plaintiff from furnishing any written proofs of loss.] [2]

Verdict and judgment for plaintiff for $165.37.  Defendant appealed.

*Errors assigned* among others were (1) refusal of binding instructions for defendant, and (2, 3) above instructions, quoting them.

*J. Orin Wait,* for appellant.—There was concealment of a material fact: Smith v. Northwestern Mut. Life Ins. Co., 196 Pa. 314; Mitchell v. Lycoming Mut. Ins. Co., 51 Pa. 402.

The acceptance of the premium by the company on July 12, was an acknowledgment of a willingness on the part of the company to accept the risk, from that date, provided the animals were in good health and the representations and warranties contained in the application were true at that time, and not otherwise.  Filing of the proof of loss was a condition precedent to right to bring suit: Xander v. Com., 102 Pa. 434; Kittanning Boro. v. Kittanning, etc., Nat. Gas Co., 26 Pa Superior Ct. 355.

*Charles A. Mertens,* for appellee.—If the company with knowledge of facts giving it a right to avoid the policy accepts a premium, it thereby waives the right to forfeit the policy: Lantz v. Vermont Life Ins. Co., 139 Pa. 546; Sill v. Mut. Res. Fund L. I. Co., 159 Pa. 625.

The notice was sufficient: Beech v. Live Stock Ins.

Assn., 137 Pa. 617; O'Neil v. American Assurance Co., 52 Pa. Superior Ct. 577.

The term "good health" when used in a policy of life insurance means that the applicant has no grave, important or serious disease and is free from any ailment that seriously afflicts the general soundness and healthfulness of the system: Horne v. Hancock Mut. Life Ins. Co., 53 Pa. Superior Ct. 330.

OPINION BY TREXLER, J., July 15, 1914:

This is a suit on a policy of insurance on a horse. The policy was dated April 22, and was left with the plaintiff conditionally, he stating, that he would keep it if he did not sell the animal. On July 12 plaintiff paid the premium to the secretary and treasurer of the company and the same was retained until September 19 when a check for the amount of the premium was sent to the insured but was not accepted by him. The policy provides that if the premium is not paid within thirty days of its date, it shall become null and void. The conditions under which the policy was issued bound neither the company, nor the plaintiff. There was no mutuality, nor union of minds. When the premium was paid and accepted by the company, the policy in the hands of the insured, instead of being what might be called an option to insure, became a contract, for which the money having been paid, good faith and fair dealing would require the company to recognize. The parties notwithstanding the provisions of the contract and its earlier date, could nevertheless at the time of the payment of the premium recognize the binding force of the agreement, either by express words, or by acts which were in furtherance of it and thus be estopped from denying its existence. The retention of the premium by the company was sufficient to justify the jury to infer a waiver and the court committed no error in so stating on the trial of the case. By the payment of the premium and its acceptance as was stated in Lantz

v. Vermont Life Ins. Co., 139 Pa. 546 (561), "it was restored to life. It was then in effect a new policy starting from the day the premium was paid."

On the same day on which the premium was paid, plaintiff consulted a veterinarian and secured some powders and with them a blister to put on the horse's neck. It was testified the horse had a cough, which according to plaintiff's testimony grew better and to the best of his knowledge disappeared entirely in a few days. Ten days after the premium was paid the horse died, the cause of its death according to the veterinarian being influenza, although there was some testimony to show that the veterinarian had stated that it was dropsy of the heart. A number of witnesses testified that the horse had taken its meals regularly, had done steady work and to all appearances was in a good state of health up to a short time before its death.

The policy requires immediate notice to the secretary of the company of any sickness and the immediate employment of a licensed veterinarian. The insured did notify the company immediately of the death of the horse, and the company at once sent its surgeon to make a post-mortem. The defendant claims that because the death was consequent upon and a continuance of, the illness which the horse is alleged to have had on the day the premium was paid there can be no recovery. Plaintiff's theory is that there was no connection between the two and that the death of the horse came without any visible prior disorder occasioning it. The dispute as to these facts was left to the determination of the jury. As was said in the case of Robson v. Pennsylvania Mutual Live Stock Ins. Co., in an opinion this day filed, post, p. 491, there is distinction between a slight ailment which does not incapacitate the animal and what is generally known as sickness which is a condition of ill health usually affecting the whole body. We will not again refer to the cases which are there cited. A horse may have a cough and still not be sick. The

plaintiff states that the horse was apparently well the day before its death, but the court could not have instructed the jury that a cough or distemper was such a condition as rendered the animal sick. The question of good health under a life insurance policy is to be determined by the jury: Horne v. John Hancock Mutual Life Ins. Co., 53 Pa. Super. Ct. 330. Whether the disorder that the horse had at the time the premium was paid was such as was covered by the policy and was in contemplation by the parties is a question for the jury: Home Mutual Life Association v. Gillespie, 110 Pa. 84. The learned court could not assume the truth of the testimony produced by the defendant and in order to decide in defendant's favor he would have had to do this. We think the decision of the matter was properly left to the jury.

The defendant company further contends that there can be no recovery because the plaintiff never filed any written notice of death or proof of loss. That the company had notice of the death is not denied. It promptly, after it received a message by telephone apprising it of the death of the horse, had its surgeon perform a post-mortem. It having received notice and acted upon it, it is assuming a very technical position to claim exemption from liability because the notice was not in writing; but be that as it may, before the sixty days had expired in which the plaintiff was required to give notice of his loss in writing and file proofs of such loss, the company by a letter sent to the plaintiff, informed him that the board of directors denied liability for the horse which died and returned the premium paid. Having denied its liability it would seem it would have been entirely unnecessary for the plaintiff to have furnished proof of death. The general proposition is stated in 13 Am. and. Eng. Ency. of Law (2d ed.), 345, as follows, "Acts of conduct making it apparent that the furnishing of proofs would be unnecessary and nugatory . . . . such as a denial of liability by the insurer . . . . are in practice

the most common instances of waiver not only of defects or of time but of any proofs whatever. The cases upon this subject are very numerous. As stated by Judge HENDERSON in the case of O'Neil v. American Assurance Co., 52 Pa. Super. Ct. 577, "many of our cases hold that where an insurance company in an action on a policy denies all liability and refuses to pay anything such defense amounts to a waiver of notice and proofs of loss: Girard Life Ins. Co. v. Mutual Life Ins. Co., 97 Pa. 15; Lebanon Mutual Ins. Co. v. Erb, 112 Pa. 149; Union Type Foundry Co. v. Kittanning Ins. Co., 138 Pa. 137; Weiss v. American Fire Ins. Co., 148 Pa. 349; White v. Metropolitan Life Ins. Co., 22 Pa. Super. Ct. 501. When an insurance company by denying liability leads a policy holder to believe that the filing of proofs would be fruitless it cannot afterwards in an action successfully defend because of a failure to make such proofs."

This disposes of all the defenses raised by the defendant. A motion was made for the entry of judgment n. o. v. but in view of the affirmance of the action of the court upon the other assignments of error it will not be necessary to discuss this feature of the case.

Judgment affirmed.