## Malchinsky, to use, v. Mutual Life Insurance Co. of N. Y.

*Insurance—Life insurance—Reinstatement of policy—Acceptance of premiums—Waiver of medical examination.*

1. If an insurer accepts payment of a premium, with knowledge that a fact exists which by the terms of the policy will render the contract of insurance void, the acceptance of the premiums is a waiver of the right to void the policy for that breach.

2. It will be presumed that agents of insurance companies charged with the collection of premiums upon life insurance policies will inform their company of all circumstances coming to their knowledge affecting its liability, and if subsequently the premiums are received by the company without any objection, any forfeiture theretofore incurred will be presumed to have been waived.

3. Courts are always prompt to seize hold of any circumstances that indicates an election to waive a forfeiture, or an agreement to do so, on which the party relied.

4. Where a policy of life insurance provides that if the policy lapses by reason of non-payment of premiums, it may, on the payment of such premiums and a satisfactory medical examination of the insured, be reinstated, and it appears that the insured gave his check to an agent of the company for the premiums and such check was cashed, a verdict and judgment for plaintiff in a suit on the policy will be sustained, where the evidence is conflicting as to whether the company did or did not waive the medical examination.

5. In an action on a policy of life insurance, a book of instructions issued by the insurance company to its solicitors and agents is properly rejected, where it appears that the insured had no knowledge of such rules.

6. Where an insurance company accepts and cashes a check for premiums, and subsequently seeks to repudiate the payment and to tender back the money received, it must tender not only the face amount of the check, but also interest on the amount.

Rule for judgment *n. o. v.* C. P. Schuylkill Co., March T., 1924, No. 536.

*A. D. Knittle,* for plaintiff.

*George M. Roads, P. B. Roads* and *Edward W. Warren,* for defendant.

BERGER, J., Oct. 18, 1926.—On March 28, 1919, the Mutual Life Insurance Company of New York issued a policy of insurance for $2000 on the life of William Malchinsky, in which Samuel Malchinsky, his father, is named as the beneficiary. The insured died on Sept. 30, 1923, and this suit to recover upon the policy was brought by Rose Malchinsky, or Rose March, the wife of the insured, as use-plaintiff. A verdict was rendered in the plaintiff's favor and motions for judgment *n. o. v.* and for a new trial, filed by the defendant, now require disposition.

An initial premium of $100 was paid by the insured March 28, 1919, and the payment of a premium of like amount on March 28th of each year subsequent to the year in which the policy issued was essential to keep it in force during the first twenty years of its life. The insured paid the premium which fell due March 28, 1920, but defaulted in the payment of the next three annual premiums. The payment of the second premium entitled the insured to participate in the surplus of the company, to be paid to him in the nature of a dividend, at the end of the second year of the policy's life, which, at his option, might be paid in cash. The amount of this dividend on the policy was $21.81, and a check for it was drawn in favor of the insured. The insured lived in Allentown, Pa., when the policy was written and moved to Pottsville, Pa., sometime prior to Sept. 17, 1923. He also changed his surname from Malchinsky to March about the time he moved to Pottsville. The dividend check was not delivered promptly to the insured because of his change of name and abode, but delivery of it was made Sept. 17, 1923, at the home of the insured, by Lawrence Judson, a district manager for the defendant in Schuylkill

County, accompanied by Frederick Vonderheiden, an agent working under him. The insured and his wife were present at the delivery of the check, and it was cashed after she had endorsed it for her husband. Judson and Vonderheiden did not call upon the insured merely to deliver the dividend check, but primarily for the purpose of negotiating a reinstatement of the lapsed policy —Judson, through correspondence with the company's office, being informed of the exact amount of money needed to reinstate the policy, and of the other requisites to that end. The negotiations for the reinstatement of the policy so progressed at this meeting that a check for the three premiums then overdue, with interest thereon at 5 per cent., amounting to $323.13, dated Sept. 17, 1923, drawn to the order of the Mutual Life Insurance Company of New York, by William March, the insured, was delivered to Judson. The body of the check was written by Mrs. March, and, before its delivery to Judson, she wrote on the back thereof, at his request: "Premium paid from March 28/21 to March 28/24, plus interest pol. 2582401." Judson took the check and said he would send it to the company to hold for collection, and, in some manner not made known, it came into the hands of John Hughes Blackman, a manager of the Mutual Life Insurance Company of New York, who endorsed it over to the Traders National Bank, for deposit to the credit of the defendant. The check was put into process of collection, as is shown by the endorsements thereon, as early as Sept. 20, 1923, and was paid in due course and charged to the account of the insured Sept. 22, 1923. The insured was in good health when he gave this check for the reinstatement of his policy, and Judson and Vonderheiden having then solicited him for an additional policy of $10,000, he presented himself to Dr. A. S. Riland, the medical examiner of the company at Pottsville, Pa., at 5 P. M., Sept. 18, 1923, for an examination. No examination was made then or at any time thereafter, Dr. Riland having told the insured that he could not examine him then, and that he might come to his office at any later time during office hours. Judson and Vonderheiden learned of March's death Oct. 1, 1923, or the day after it had occurred. From Sept. 17, 1923, until Oct. 7, 1923, there was no communication between the defendant, or any of its agents or representatives, and March or his wife, relating to the reinstatement of the policy of insurance. On Oct. 25, 1923, Judson and John C. Hughes, an assistant manager of the company at Scranton, called upon Mrs. March at her home and tendered her $323.13 in cash, or the face amount of the check which had been given for the reinstatement of the policy, claiming that the policy had not been reinstated. Mrs. March declined to accept the check. This summary of the facts is based either upon the admissions of the parties or upon the uncontroverted testimony of the witnesses.

Mr. Judson and Mr. Vonderheiden both testified that the insured was told, at the time they accepted his check, that he would have to pass a physical or medical examination made by Dr. Riland before the policy could be reinstated, and that a blank form for the examination was filled in by Judson, from facts given to him by the insured, in the presence of his wife. They also testified that on Tuesday, Oct. 9, 1923, in company of each other, they called on Mrs. March, told her that the policy of insurance had not been reinstated, and that the company was willing to return to her the sum of money for which the check had been drawn. Mrs. March testified that nothing was ever said about the necessity of a medical examination as a condition precedent to the reinstatement of the policy. She admitted that Judson and Vonderheiden called on her on or about Oct. 9, 1923, but denied that they told her the policy had not been reinstated or that the company would refund the premiums represented by the check drawn for $323.13, and said that both then assured her

that the policy was good, and that the company would pay it. This is a summary of the testimony which is contradictory and which is deemed pertinent to the disposition of the motions in hand.

The provisions of the policy which, in our opinion, are pertinent are the following:

"*Premiums.* All premiums are payable in advance at said Home Office or to any Agent of the Company upon delivery, on or before date due, of a receipt signed by the Treasurer of the Company and countersigned by said agent. A grace of thirty-one days shall be granted for the payment of every premium after the first, during which period of grace the insurance shall continue in force.

"Except as herein provided the payment of a premium shall not maintain this Policy in force beyond the date when the next premium is payable. If any premium be not paid before the end of the period of grace, then this Policy shall immediately cease and become void, and all premiums previously paid shall be forfeited to the Company except as hereinafter provided.

"*Reinstatement.* Unless it shall have been surrendered for its cash value, or unless the term for which the insurance has been continued shall have expired, this Policy may be reinstated at any time within three years from date of default in payment of any premium, upon evidence of insurability satisfactory to the Company and upon payment of the arrears of premiums with interest thereon at the rate of five per centum per annum; and, at the option of the Insured, either *(a)* upon payment in cash to the Company of any indebtedness which existed at said date of default, together with interest thereon as specified in the loan provisions of this Policy; or *(b)* upon reinstatement of such indebtedness, increased by interest thereon as specified in the loan provisions of this Policy, provided such reinstated increased indebtedness does not exceed the loan value at the date of reinstatement.

"*Notice.* No agent or other person except the President, Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company has power on behalf of the Company to make, modify or discharge this or any contract of insurance, to extend the time for paying a premium, to waive any lapse or forfeiture or any of the Company's rights or requirements, or to bind the Company by making any promise respecting any benefits hereunder or by accepting any representation or information not contained in the written application for this Policy."

The point raised by the motion for judgment *n. o. v.* is whether the acceptance of the check for the overdue premiums, with interest thereon, and the cashing of it by the company, under the circumstances of the instant case, was sufficient to justify the trial judge in submitting to the jury the question whether the company impliedly waived the requirement of a medical examination as a condition precedent to a reinstatement of the policy, and reinstated the policy.

Defendant's counsel rely very strongly upon White *v.* Metropolitan Life Ins. Co., 22 Pa. Superior Ct. 501, to support their contention of the want of competent evidence in the instant case, to sustain the finding of the jury that the defendant impliedly waived the medical examination of the insured, as a condition precedent to the reinstatement of his policy, and that it reinstated the policy before the insured died. In the cited case, as in this case, payment of all premiums in arrear on the lapsed policy, and presentation to the insurer of evidence satisfactory to it of the good health of the insured, was a condition precedent to the reinstatement of the policy. And in that case, as here, the jury, having been permitted to determine whether or not the policy had

been reinstated, found in favor of the plaintiff. The distinguishing feature of the two cases is that in the former the overdue premiums and an accompanying revival application were received by the agent of the company, who receipted therefor in a writing, dated Nov. 24, 1896, containing a stipulation to the effect that the money was accepted as a deposit merely, subject to be returned to the payer if the insurer did not revive the policy, and on the back of this receipt was a direction to the payer to write to the secretary of the company if either the reinstated policy or the money was not returned within three weeks from the date of its deposit. The policy itself never passed out of the insurer's hands, and no inquiry on behalf of the insured was ever directed to the secretary of the company respecting the return of the money. The agent of the company who had accepted the premiums in arrear thus conditioned paid them over to the company within a day or two after their receipt, and the company accepted and retained them, without any offer to return made by it before the death of the insured, Jan. 1, 1897. It was held that the conditional acceptance of the premiums in arrear by the agent, standing alone, would not have been sufficient to reinstate the policy, but that the action of the agent and of the company, subsequent to the deposit of the premiums in arrear, was sufficient to support a verdict for the plaintiff, based upon a finding that the insurance company impliedly waived receipt of satisfactory evidence of the good health of the insured, and by acceptance and retention of the overdue premiums reinstated the policy.

In the instant case, the oral testimony as to whether the deferred premiums were accepted conditionally or unconditionally by the defendant's agents is conflicting, but the endorsement on the check, placed thereon at the direction of Judson, one of the company's assistant managers, shows, with certainty, that it was drawn by the insured for the unconditional payment of the deferred premiums necessary to reinstate his policy. The defendant itself, not any of its agents, was the first and only recipient of the proceeds of the check, and appropriated them unequivocally to its own use from Sept. 22, 1923, until Oct. 25, 1923, and then first tendered the face amount of the check, without interest, to the widow of the insured, on the plea that a reinstatement of her husband's policy had not been effected before his death, Sept. 30, 1923, of which their assistant manager and agent had notice on Oct. 1, 1923, and the company, through them, not later than Oct. 9, 1923, because on that date the agents of the company have testified that they informed Mrs. March of the company's willingness to return to her the proceeds of the check.

What significance, then, either as a matter of law or of fact, is to be attached to the company's act in cashing the check? And, first, as to the matter of law involved. It is generally held that if an insurer accepts payment of a premium, with knowledge that a fact exists which, by the terms of the policy, will render the contract of insurance void, the acceptance of the premium is a waiver of the right to void the policy for that breach: Shea *v.* Massachusetts Benefit Ass'n, 35 N. E. Repr. 855, 856 (Supreme Court of Mass.); Lechler *v.* Montana Life Ins. Co., 186 N. W. Repr. 271, 23 Am. Law Repr. 1193, 1198; German-American Ins. Co. of N. Y. *v.* Yeagley, 71 N. E. Repr. 897, 899 (Supreme Court of Indiana). For the application of this principle by the appellate courts of our own State, see Elliott *v.* Lycoming County Mutual Ins. Co., 66 Pa. 22, 26; Kalmutz *v.* Northern Mutual Ins. Co. of Lancaster County, 186 Pa. 571, 577; Sitler *v.* Spring Garden Mutual Fire Ins. Co. of York (No. 2), 18 Pa. Superior Ct. 148, 152; Mills *v.* Pennsylvania Mutual Live Stock Ins. Co., 57 Pa. Superior Ct. 483, 488, 489. The company knew, when it accepted the overdue premiums, that the insured had not fur-

nished a report from their medical examiner as evidence of insurability. It alone knew what, if anything, other than a report from their medical examiner, would be evidence of insurability satisfactory to it. Having accepted the overdue premiums unconditionally with this knowledge in its possession, the company is estopped from asserting that it did not reinstate the policy, and this estoppel, having been established by uncontradicted evidence, should have been declared and enforced as a matter of law.

Assuming that the conclusion just stated is erroneous, how does the question of waiver or estoppel stand, in view of the conflict in the testimony of the persons who were present when the check for the premiums was drawn and accepted, as to whether the acceptance of it was or was not conditioned upon the passing of a satisfactory medical examination by the insured before the company's medical examiner? If we accept as true the testimony of Judson and Vonderheiden, the company's representatives, that, without a medical examination establishing insurable health, the policy was not to be reinstated, and that during the pendency of the question of insurability the company was to hold the check for collection, it is presumed that, as agents charged with the collection of premiums upon policies, they informed their company of all circumstances coming to their knowledge affecting its liability, and if subsequently the premiums are received by the company without any objection, any forfeiture theretofore incurred will be presumed to have been waived: Globe Mutual Fire Ins. Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387, 389, 390; German-American Ins. Co. v. Yeagley, 71 N. E. Repr. 897, 903. In Wachter v. Assurance Co., 132 Pa. 428, 440, Sterrett, J., speaking for the court and citing section 392, Wood on Insurance, said: "It would be disastrous to commercial as well as other interests if a person, by acting through the agency of another, could shield himself from liability for such person's acts ad libitum. Fortunately, no such rule exists; and he who intrusts authority to another, in whatever department of business, is bound by all that is done by his agent within the scope of his apparent power, and cannot screen himself from the consequences thereof upon the ground that no authority in fact was given him to do the particular act, unless the act was clearly in excess of his apparent authority, or was done under such circumstances as put the person dealing with him upon inquiry as to the agent's real authority." See, also, Light v. Mutual Fire Ins. Co., 169 Pa. 310, 315, 316; Highlands v. Fire Ins. Co., 177 Pa. 566, 570; Thomas v. Employers Liability Assur. Corp., Ltd., of London, 284 Pa. 129, 134. Moreover, the rule is on an application for judgment for defendant n. o. v. and the testimony should be read in the light most advantageous to plaintiff, all conflicts therein reserved in his favor, and he be given the benefit of every fact and inference of fact which may reasonably be deduced therefrom: Bowser v. Citizens Light, Heat and Power Co., 267 Pa. 483, 487; McKenzie v. Campbell, 84 Pa. Superior Ct. 112, 113. The application of this rule to the evidence in the instant case requires us to treat the verdict of the jury as a finding that a medical examination of the insured was waived, and the premiums accepted unconditionally by Judson and Vonderheiden, the company's representatives.

The payment made by the insured for the reinstatement of his policy was not tendered by the company to his widow or personal representative until Oct. 25, 1923. If the check for $323.13, which was cashed by the company Sept. 22, 1923, was not accepted by the company in payment of the overdue premiums of the policy to relieve it from forfeiture, the insured was entitled to its return with interest from Sept. 22, 1923, to the day of tender, or Oct. 25, 1923. The principal only was tendered, and no tender of interest was ever

Malchinsky, to use, v. Mutual Life Insurance Company of New York.

made. If it be said that the amount of interest due and untendered is small, a sufficient answer is what was said by Orlady, J., respecting forfeitures, in Gonder v. Lancaster County Mutual Fire Ins. Co., 17 Pa. Superior Ct. 119, 123, 124, namely: "Courts are always prompt to seize hold of any circumstances that indicate an election to waive a forfeiture, or an agreement to do so on which the party relied. Any agreement, declaration, or course of action on the part of the insurance company that would lead an insured party to believe honestly that by conforming thereto a forfeiture of his policy would not be incurred, would, and should, estop the company from insisting upon the forfeiture, although it might be claimed under the express letter of the contract: Insurance Co. v. Eggleston, 96 U. S. 572. But courts cannot avoid enforcing forfeitures when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party on which to base a reasonable excuse for the default. It must be a just and reasonable ground, one on which the insured has a right to rely: Thompson v. Knickerbocker Life Ins. Co., 104 U. S. 252:" The Hartford Life Annuity Ins. Co. v. Unsell, 144 U. S. 439, 36 L. Ed. 497, 500. Therefore, the motion for judgment n. o. v. is not sustained.

The defendant has filed seventeen reasons in support of its motion for a new trial. The 1st and 2nd reasons are that the verdict is against the evidence and against the law; the 3rd, 4th, 6th, 7th and 9th reasons allege error in the refusal of defendant's points. The reasons stated in support of the action in refusing to sustain the motion for judgment n. o. v. are applicable here. Therefore, the 1st, 2nd, 3rd, 4th, 6th, 7th and 9th reasons for a new trial are overruled. The 5th and 8th reasons allege error in the qualifications attached to the answers given to defendant's 4th and 7th points for charge. The qualification attaching to the affirmation of the 4th point for charge was made because all the evidence relating to the check for $21.81 was oral; and the qualification attaching to the 7th point was made because the conditions which Judson and Vonderheiden said were attached to the receipt of the check for overdue premiums were not communicated to their employer, the defendant company; and because the qualification is correct as an abstract principle of law. The 5th and 8th reasons for a new trial are overruled. The 10th reason charges error in the rejection of defendant's offer of a printed form of "Application for Establishing Policy," marked Exhibit No. 5. This application was not executed by the insured, and there is no evidence that he knew any of its printed content. The 17th reason for a new trial also relates to this application. The 10th and 17th reasons for a new trial are overruled. The 11th reason alleges error in the rejection of a letter written by Mr. Knittle, of plaintiff's counsel, on Oct. 13, 1923, to Judson, the assistant manager of the company. This letter was offered for the purpose of contradicting testimony given by Mrs. March, but it was not shown that she had any knowledge either that the letter had been mailed, or of its contents, and the facts referred to in the letter may readily have been obtained by Mr. Knittle from another source. The 11th reason is overruled. The 12th reason charges error in the rejection of an offer of a book by the defendant, entitled "Rules, Regulations and Instructions for Local Agents and Solicitors." The insured had no knowledge of these rules, and they were not a part of his contract. The rejection of this offer was proper. See Essington Enamel Co. v. Granite State Fire Ins. Co., 45 Pa. Superior Ct. 550, 556. The 12th reason is overruled. The 13th and 14th reasons charge error in the instructions given to the jury. What has been said in overruling the motion for judgment n. o. v. is applicable to these, and they are overruled. The 15th

Malchinsky, to use, v. Mutual Life Insurance Company of New York.

and 16th reasons for a new trial relate to two offers of cumulative testimony. If the rejection of these offers of testimony was error, the error was harmless. The reasons given for the rejection of this testimony, however, are believed to be sound. The 15th and 16th reasons for a new trial are overruled, and the motion for a new trial is refused.

Motions for judgment *n. o. v.* and for a new trial are overruled. Judgment is directed to be entered by the prothonotary upon the verdict, in favor of the plaintiff and against the defendant, upon payment of the jury fee.

From M. M. Burke, Shenandoah, Pa.